## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| ABS GLOBAL, INC., | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Case No. 3:14-cv-00503 |
| | § | |
| INGURAN, LLC d/b/a SEXING | § | |
| TECHNOLOGIES, | § | |
| | § | |
| Defendant | § | |

## INGURAN, LLC'S PARTIAL MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12, Defendant Inguran, LLC ("Inguran") respectfully requests that the Court dismiss Counts Two through Five of Plaintiff's Complaint.[1]

### INTRODUCTION

1.      Nearly a decade into their still ongoing and, until now, amicable contractual relationship, Plaintiff ABS Global, Inc. ("ABS") suddenly and without warning alleges numerous infirmities in the parties' services contract.  In Counts 3, 4, and 5 of its Complaint, ABS requests various declarations construing that contract and adjudicating it as "unfair."  In Count 2, ABS asserts an unfair competition claim under Wisconsin common law based on various provisions of

---

[1] Although Inguran does not seek to dismiss the entire Complaint, the filing of this motion still tolls Inguran's answer deadline.  *See Intercom Ventures, LLC v. FasTV, Inc.*, 2013 WL 2357621, at *6-7 (N.D. Ill. May 28, 2013) ("While it is unclear from the language of Rule 12(a) whether service of a Rule 12(b) motion directed at only parts of a pleading enlarges the period of time for answering the remaining portion of the pleading, the weight of the limited authority on this point is to the effect that the filing of a motion that only addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion.") (quoting 5B Wright & Miller, FED. PRAC. & PROC. § 1346 (3d ed. 2014)); *Compton v. City of Harrodsburg, Ky.*, 287 F.R.D. 401, 402 (E.D. Ky. 2012) ("[T]he majority of federal courts that have addressed the issue have held that filing a partial motion to dismiss does indeed extend the time to file a responsive pleading with respect to all claims, including those not addressed in the Rule 12 motion.").  If ABS argues otherwise, Inguran respectfully requests that the Court extend Inguran's answer deadline until fourteen days after the Court rules on this motion.

the contract—a contract that expressly requires the application of *Texas* law to any dispute arising thereunder.  All these claims fail under Rule 12 and should be dismissed.

2.     Count 2 fails because the contract on which ABS's Wisconsin law claim is based contains a Texas choice-of-law clause.  Such clauses are fully enforceable in Wisconsin and govern all claims arising from or relating to the applicable contract.  As such, ABS may properly bring its state unfair competition claim under Texas law only.

3.     Counts 3 through 5 fail for lack of a justiciable dispute.  ABS asks the Court to construe certain provisions in the parties' contract in its favor, or simply to find them unenforceable.  Yet, prior to filing the Complaint, ABS had never complained about the contract or voiced concerns about its legality.  Nor has Inguran threatened litigation on any issues raised in these Counts.  ABS's contentions that the challenged contractual provisions are contrary to Texas law are insufficient to establish a "case or controversy" for purposes of the Declaratory Judgment Act.

4.     In reality, ABS—which continues to enjoy benefits under the contract— manufactured this lawsuit to pressure Inguran into renegotiating the contract's terms.  ABS's desire to improve its contractual position does not entitle it to the requested relief.

## BACKGROUND

5.     ABS operates a facility, known as a "bull stud," where it produces bull semen for sale to dairy farmers and cattle producers.  The famers and cattlemen use the semen to breed calves with preferable traits.  Dairy farmers, for example, generally prefer to breed cows that can produce high volumes of milk.

6.     Some of ABS's customers purchase what ABS labels "Sexed Bovine Semen," *i.e.*, semen that is processed so that the resulting dose (sold in "straws") will selectively produce

either a male or a female calf.  Inguran's subsidiary, XY, LLC, has developed and obtained several patents on a highly successful "sorting" technique for producing such sexed semen. Rosenstein Decl. ¶ 3.[2]  Over the years, XY continually has worked to improve the patented sorting methods and associated equipment.  *Id.*  Inguran has licensed the patents from XY so that it can provide sorting services to its customers.  *Id.*  Pursuant to its license, Inguran also has worked on improvements to the patented process.  *Id.*

7.     Since the mid-2000s, Inguran has provided its sorting services to ABS under a services contract, enabling ABS to become a leading supplier of sexed bull semen.  *Id.* ¶ 4. Inguran and ABS entered into their first "Semen Sorting Agreement" on May 30, 2006.  *Id.* They subsequently executed successor agreements in September 2007, October 2010, July 2011, and September 2012.  *Id.*  Each one obligated Inguran to produce, and ABS to purchase, certain minimum amounts of sorted bovine semen on a monthly or annual basis.  *Id.*

8.     ABS's Complaint centers on the September 2012 agreement (the "Contract"). The parties began negotiating the Contract in March 2012, when two of ABS's senior executives, John Worby and Jesus Martinez, travelled to Houston, Texas to meet with Inguran's co-CEOs, Juan Moreno and Maurice Rosenstein, and Inguran's CFO, Scott Holland.  *Id.* ¶ 5.  Following the meeting, Mr. Worby wrote to Mr. Rosenstein in Texas to express interest in a long-term renewal of the parties' then-effective July 2011 agreement.  *Id.*  Two other ABS executives subsequently travelled to Texas for a second meeting to discuss the terms of the new deal.  *Id.*

---

[2] Filed with this motion is the Declaration of Maurice A. Rosenstein.  Because this motion is based in part on Federal Rule of Civil Procedure 12(b)(1), the Court may consider Mr. Rosenstein's Declaration in deciding this motion.  *See United Transp. Union v. Gateway W. R.R. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996) ("[T]he court may also look beyond the complaint and review any extraneous evidence submitted by the parties to determine whether subject matter jurisdiction exists.").

9.     After months of careful negotiations, the parties executed a detailed agreement that defines their respective rights and obligations in straight-forward, unambiguous terms.  The Contract contains an integration clause and a Texas choice-of-law provision.  Doc. No. 1, ¶ 106.  It also expressly states that both parties were represented by counsel, and that after consultation with their attorneys, both parties determined the terms of the Contract to be "fair and reasonable."

10.     With their new agreement in place, ABS and Inguran continued their amicable relationship.  Rosenstein Decl. ¶ 6.  Indeed, to this day, Inguran continues producing, and ABS continues purchasing, large quantities of sorted semen as provided for in the Contract.  *Id.*

11.     On July 14, 2014—nearly two years into the Contract term—ABS filed this lawsuit.  Before then, it never had indicated a misunderstanding or dispute about the Contract's scope, enforceability, or fairness.  *Id.* ¶ 7.  Nor had it accused Inguran of engaging in anti-competitive or unfair conduct.  *Id.*  And as for Inguran, it never threatened ABS or otherwise took any actions that reasonably could have caused ABS to fear being sued, as is required to justify declaratory relief.  *Id.*

## STANDARD OF REVIEW

### A.     Count 2

12.     Inguran moves to dismiss Count 2 of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Under Rule 12(b)(6), dismissal is proper "if the complaint fails to set forth enough facts to state a claim to relief that is plausible on its face."  *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007).  To avoid dismissal, the plaintiff must allege facts that when "accepted as true . . . plausibly suggest a right to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

4

**B.**    **Counts 3 – 5**

13.    Inguran moves to dismiss Counts 3 through 5 of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), which "governs dismissal for lack of subject matter jurisdiction." *DePuy Orthopaedics, Inc. v. Orthopaedic Hosp.*, 2013 WL 660470, at *1 (N.D. Ind. Feb. 22, 2013).  To establish jurisdiction in a declaratory judgment action, the plaintiff must allege an actual case or controversy that is "ripe for decision." *Scottsdale Ins. Co. v. Village of Dixmoor*, 2014 WL 1379888, at *2 (N.D. Ill. Apr. 8, 2014).  "[T]he injury in question must be actual or imminent, not conjectural or hypothetical." *Id.*  The controversy also must have existed as of the date the plaintiff filed its complaint, and at all times since.  *Already, LLC v. Nike, Inc.*, --- U.S. ---, 133 S. Ct. 721, 726 (U.S. 2013).  Thus, "[a]llegations of merely possible future injury do not satisfy the requirements of Article III."  *Scottsdale*, 2014 WL 1379888, at *2.  If the parties did not have an actual dispute between them when the plaintiff filed suit, "the court has no subject-matter jurisdiction and the claim must be dismissed pursuant to [Rule] 12(b)(1)."  *Id.*; *see also Klein Steel Servs. Inc. v. Sirius Prot., LLC*, 2014 WL 1685912, at *3 (E.D. Mich. Apr. 29, 2014) (stressing that Article III requires "an actual dispute that relates to the legal relationship between [the parties]").

**ARGUMENT**

**A.**    **The Court should dismiss Count 2 because Wisconsin law is inapplicable to ABS' unfair competition claim.**

14.    Count 2 of ABS's Complaint fails because ABS has not alleged, and cannot allege, facts upon which its requested relief can be granted.  ABS asserts an unfair competition claim under Wisconsin common law.  The parties' Contract, however, contains requires the Contract to be construed under the laws of Texas.

> This Agreement shall be governed by and construed in accordance with the laws of the State of Texas without giving effect to any choice of law or conflict of law

5

provisions or rule that would cause the application of the laws of any jurisdiction other than the State of Texas, except that questions affecting the construction and effect of any patent shall be determined by the law of the country in which the patent was granted.

Doc. No. 1, ¶ 106.

15.     To determine the validity and scope of this choice-of-law clause, the Court must apply Wisconsin conflict of law rules.  *County Materials Corp. v. Allan Block Corp.*, 431 F. Supp. 2d 937, 949 (W.D. Wis. 2006).  Under these rules, a contractual choice-of-law clause is fully enforceable.  *Id.*  The clause controls all claims arising from or concerning the parties' contract.  *See Eragen Biosciences, Inc. v. Nucleic Acids Licensing, LLC*, 2007 WL 5517470, at *9 (W.D. Wis. Feb. 26, 2007), *rev'd on other grounds*, 540 F.3d 694 (7th Cir. 2008) (holding that where the plaintiff's claims "relate to or arise out of" its contract with the defendant, the law specified in the contract's choice-of-law clause governs those claims).

16.     Here, ABS's unfair competition claim centers on the allegedly onerous and anti-competitive terms that Inguran "insisted" on including in the Contract.  And since ABS's claim does not arise from "questions affecting the construction and effect of any patent," the Contract's choice-of-law clause controls.  Thus, ABS may seek to bring an unfair competition claim (and obtain relief therefore) only under Texas law.  *See, e.g., County Materials*, 431 F. Supp. 2d at 950 (W.D. Wis. 2006) (applying a Minnesota choice-of-law clause where the plaintiff, who sought a declaration that a contractual covenant-not-to-compete was unenforceable under Wisconsin law, "failed to cite [a Wisconsin] public policy ground which would warrant overriding the choice of law provision"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 781 F. Supp. 2d 955, 965 (N.D. Cal. 2011) (dismissing the plaintiff's North Carolina, Nevada, and Tennessee state-law antitrust and unfair competition claims because such claims fell "within the ambit of" New York and Texas choice-of-law clauses in the parties' contracts); *DeJohn v. The .TV Corp. Int'l*, 245 F.

Supp. 2d 913, 922 (N.D. Ill. 2003) (holding that where the parties' contract contained a New York choice-of-law clause, the plaintiff "cannot pursue [fraud or deceptive practices act] claims based on non-New York law"); *WTM, Inc. v. Henneck*, 125 F. Supp. 2d 864, 868 (N.D. Ill. 2000) ("[T]he parties' express [Illinois] choice-of-law provision is enforceable.  Therefore, the choice-of-law provision bars the Minnesota Securities Act claim . . . .")

**B.**     **The Court should dismiss Counts 3 through 5 because ABS has failed to allege facts establishing a justiciable dispute.**

17.     In Counts 3, 4, and 5, ABS seeks declarations construing various provisions in the Contract and determining whether they are enforceable under Texas law.  However, a federal district court may grant declaratory relief only where there is a justiciable "case or controversy." *Already*, 133 S. Ct. at 726.  This requires a "definite and concrete" dispute that "touch[es] the legal relations of parties having adverse legal interests."  *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  The dispute must be "real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *Id.*; *see also Incredible Invs., LLC v. Fernandez-Rundle*, 984 F. Supp. 2d 1318, 1324 (S.D. Fla. 2013) (stressing that the "controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative, threat of future injury").

18.     The plaintiff carries the burden of proving justiciability.  *Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1329 (Fed. Cir. 2014).  To satisfy its burden, the plaintiff must demonstrate standing, *i.e.*, "a personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Already*, 133 S. Ct. at 726. While the plaintiff need not show that litigation is imminent, it "must allege facts from which it appears there is a *substantial likelihood* that [it] will suffer injury in the future." *Incredible Invs.*,

984 F. Supp. 2d at 1324 (emphasis added).  Thus, the plaintiff must show that the defendant has "taken a course of action . . . that would cause a reasonable person to infer [harm],"[3] or "which may prompt [the plaintiff] to reasonably incur costs to mitigate or avoid that harm."[4]  *See also Organic Seed Growers*, 718 F.3d at 1355 ("Article III jurisdiction may be met where the [defendant] takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do."); *Mama Cares Found. v. Nutriset Societe Par Actions Cimplifiee*, 825 F. Supp. 2d 178, 183 (D.D.C. 2011) ("In the absence of any affirmative act by plaintiffs toward defendants (or vice versa), plaintiffs cannot establish a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."); *N. Am. Natural Res., Inc. v. Strand*, 252 F.3d 808, 814 (6th Cir. 2001) (vacating the district court's denial of a motion to dismiss for lack of justiciability where the defendant "ha[d] taken no action contrary to any of the [plaintiffs]' interests").

19.    The plaintiff also must establish that it has "taken significant, concrete steps" toward engaging in the activity that supposedly could subject it to liability.  *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 880 (Fed. Cir. 2008).  Otherwise, "the dispute is neither 'immediate' nor 'real' and the requirements for justiciability have not been met."  *Id.*; *see also id.* at 881 (emphasizing that a plaintiff "may not obtain a declaratory judgment merely because it would like an advisory opinion on whether it would be liable [to the defendant] if it were to initiate some merely contemplated activity"); *Organic Seed Growers*, 718 F.3d at 1360 ("When it is uncertain when, if ever, the declaratory plaintiff would engage in potentially infringing

---

[3] *Klein*, 2014 WL 1685912, at *3.
[4] *Organic Seed Growers and Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1355 (Fed. Cir. 2013).

activity, the dispute does not present a case or controversy of sufficient immediacy to support a declaratory judgment.").

20.     Justiciability is an objective concept, so the plaintiff's subjective beliefs are irrelevant. *See Clapper v. Amnesty Int'l USA*, --- U.S. ---, 133 S. Ct. 1138, 1152 (2013) ("[A]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."). And again, the dispute must have been justiciable both at the time the plaintiff filed its complaint, and at all times since. *Already*, 133 S. Ct. at 726. Moreover, "once challenged, allegations alone are insufficient to meet the [plaintiff]'s burden." *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1378 (Fed. Cir. 2012). Rather, the plaintiff must offer a "factual basis" to support the court's exercise of its declaratory jurisdiction. *Id.*

21.     Applying these principles, courts find justiciability only where the defendant has affirmatively taken a position adverse to the plaintiff or otherwise acted against the plaintiff's interests. In *3M Company v. Avery Dennison Corp.*, for instance, the defendant had accused the plaintiff's product of infringing its patent and then, after the plaintiff denied infringement, had attempted to compel the plaintiff to pay for a license. *Id.* at 1374-75. In *ABB Inc. v. Cooper Industries, LLC*, the defendant had sent so-called "warning letters" to the plaintiff, as well as to a third party with whom the plaintiff did business. 635 F.3d 1345, 1347 (Fed. Cir. 2011). In the letters, the defendant accused the plaintiff of breaching a license agreement they had entered into several years earlier, and it threatened to "vigorously defend its rights should [the third party] attempt to make products covered by one or more of [its] patents." *Id.* And in *Full Gospel Baptist Church Fellowship International v. Capital One*—in which the plaintiff sought a declaration interpreting an aircraft lease contract—the defendant-lessor had unilaterally extended

the lease term and then billed the plaintiff for substantial repair and lost value costs.  2013 WL 950567, at *1-2 (E.D. La. Mar. 11, 2013).[5]

22.     By contrast, courts refuse to find justiciability where the defendant has not engaged in conduct that reasonably could be perceived as threatening, or where the purported risk of harm to the plaintiff is merely speculative.  For example, in *Klein Steel Services Inc. v. Sirius Protection, LLC*, the plaintiff—which formerly had licensed the defendant's patents— sought a declaration that its new product did not constitute an "improvement" on the defendant's technology.  2014 WL 1685912, at *1.  If the product did constitute an "improvement," then a provision in the parties' prior contract arguably would have obligated the plaintiff to assign the rights to the new product to the defendant.  *Id.*  But because the defendant had done nothing to cause the plaintiff any concern, the court dismissed the case, stressing that the plaintiff "only anticipates an infringement claim."  *Id.* at *3.  In *Benitec Australia, Ltd. v. Nucleonics, Inc.*, the plaintiff sought a declaration of non-infringement.  495 F.3d 1340 (Fed. Cir. 2007).  However, the plaintiff, who filed suit in 2005, conceded that it did not anticipate filing the requisite new drug application with the FDA until "at least 2010-2012, if ever."  *Id.* at 1346.  The Federal

---

[5] *See also Danisco*, 744 F.3d at 1332 (finding justiciability where the plaintiff, who sought a declaration of non-infringement, alleged facts demonstrating that the defendant had "engaged in a course of conduct that show[ed] a preparedness and a willingness to enforce its patent rights"); *Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1357 (Fed. Cir. 2013) (finding justiciability over a claim for a declaration of non-infringement where the plaintiff had "concrete plans" to supply, had already marketed and responded to supply requests for, and wished to execute contracts with customers for a potentially infringing product, and where the defendant had "made it clear that it will protect its patent rights against any such activity by [the plaintiff]"); *Feldman v. TD Ameritrade Holding Corp.*, 2006 WL 3591305, at *2 (D. Neb. Dec. 8, 2006) (finding jurisdiction over a claim for a declaration of rights under an employee stock option agreement, where the plaintiff-employee alleged that he "ha[d] legal rights to certain stock options and that [the defendant-employer] dispute[d] his right to exercise those options"); *Repub. Servs., Inc. v. Tex. Ecological Servs., Inc.*, 118 F. Supp. 2d 775, 776-77 (S.D. Tex. 2000) (finding justiciability where the plaintiff, after purchasing the defendant's assets, had sent a letter to the defendant's lawyer asserting a claim for "Indemnifiable Damages" under the purchase contract, but had received no response); *CH2M Hill, Inc. v. Comal County, Texas*, 2009 WL 3617528, at *4-5 (W.D. Tex. 2009) (finding justiciability where the defendant allegedly terminated the parties' engineering services contract without cause, even though the plaintiff was still performing its contractual obligations); *Domino's Pizza LLC v. Deak*, 654 F. Supp. 2d 336, 339-40 (W.D. Penn. 2009), *rev'd on other grounds*, 383 Fed. Appx. 155 (3d Cir. 2010) (finding justiciability where the plaintiff and defendant previously had exchanged letters in which they adopted differing views of the defendant's rights under a franchise agreement).

Circuit held that the plaintiff's claim was non-justiciable since it was uncertain when the plaintiff would engage in the allegedly infringing activity. *Id.* at 1346-47.[6]

23.     Here, ABS alleges no facts showing a dispute or prior disagreement with Inguran. While ABS accuses Inguran of negotiating onerous contracts and acquiring patents, ABS fails to explain why such conduct—which ABS asserts has been ongoing since at least May 2007[7]— suddenly gave rise to a justiciable dispute in July 2014.  Again, ABS never had complained about the Contract before suing Inguran.  As for its purported wish to compete, ABS offers no evidence of it actually taking steps to do so.

> (i)     *Count 3*

24.     With respect to Count 3 specifically, ABS asks the Court to construe various provisions in the Contract as not encompassing certain activities ABS apparently is pursuing or would like to pursue.  This is the first time ABS has raised this issue.  ABS also offers no allegations that Inguran ever has threatened to sue ABS under these various provisions, or that Inguran ever has taken a position contrary to ABS' proffered interpretation.  That ABS may subjectively worry about the consequences of violating the contract is irrelevant.

> (ii)    *Count 4*

25.     In Count 4, ABS seeks a determination that the Contract violates the Texas Covenants Not to Compete Act.  This claim also fails.  The Covenants Not to Compete Act only is relevant if (a) ABS actually attempts to compete with Inguran, and (b) Inguran responds by

---

[6] *See also Janssen Pharm., N.V. v. Apotex, Inc.*, 540 F.3d 1353, 1359-60 (Fed. Cir. 2008) (dismissing the defendant's declaratory counterclaim after rejecting as speculative the defendant's argument that the plaintiff-patent holder's potential right to a statutory 180-day exclusivity period would delay it from entering the market); *In re Soszynski*, 508 B.R. 693, 696-97 (Bankr. N.D. Ill. 2014) ("[T]he Promoter raises, on information and belief, an issue that the Boxer may attempt to raise as a defense in a lawsuit the Promoter may bring to enforce what it claims are its equitable remedies under the Promotional Agreement. . . .  Promoter seeks a declaration from this court [of] the law upon a hypothetical state of facts, precisely what is not allowed by Article III.  Therefore, dismissal of the prayer for declaratory judgment is proper for lack of subject matter jurisdiction.").

[7] *See* Compl. ¶ 72 ("[Inguran]'s patent acquisition strategy began at least as early as May 2007 . . . .").

suing ABS for breaching the Contract. *See Richards v. Holder*, 2014 WL 2805280, at *6 (D. Mass. June 19, 2014) (questioning the justiciability of the plaintiff's declaratory relief claim, which "essentially ask[ed] the Court to issue a pre-enforcement opinion on the construction of a federal criminal statute given a hypothetical set of facts"). ABS has alleged no such facts. ABS merely asserts that Inguran "insisted" on the challenged provisions being part of the deal. But that was two years ago. And at all times since then, both parties have been performing under the Contract without discord or dissent—consistent with the parties' contractual representation that, after consultation with their respective legal counsel, they determined that the Contract was "fair and reasonable" in all respects. Indeed, until it filed suit, ABS never said or implied that the Contract terms, which it expressly agreed to, were in any way unfair, unreasonable, or unenforceable. On the face of its Complaint, ABS's claimed need for the protection of the Covenants Not to Compete Act, therefore, is speculative and non-justiciable. The Declaratory Judgment Act simply does not permit purely advisory opinions of how a particular statute may or may not apply to a hypothetical state of facts that may never unfold. *See Gen. Offshore Corp. v. Farrelly*, 743 F. Supp. 1177, 1185 (D. V.I. 1990) ("[T]here is no case or controversy if a complained-of statute or regulation is not likely to be applied against the complainant.").

### *(iii)  Count 5*

26.    Count 5—in which ABS seeks a determination that the Contract's liquidated damages clause is unenforceable—fares no better. ABS alleges no facts indicating that it reasonably should fear having to pay the liquidated damages, or that Inguran has threatened to sue for them should ABS refuse to pay in the event they become due. Instead, ABS merely introduces the liquidated damages clause and argues why it should be unenforceable. ABS's subjective concerns are irrelevant, however. And regardless, the parties continued performing to

and through the date of the filing of the Complaint.  ABS does not contend that either will stop, so the liquidated damages clause was not even in play when the Complaint was filed.  Once again, ABS improperly seeks an advisory opinion of how the Contract might apply in a situation that could only have been pure speculation when the Complaint was filed.[8]

**C.    Even if the Court finds a justiciable dispute, it still should not exercise its discretion to entertain ABS's request for declaratory relief.**

27.     "[W]hether to issue a declaratory judgment is entirely left to the discretion of the district court."  *Schell v. OXY USA, Inc.*, 822 F. Supp. 2d 1125, 1140 (D. Kan. 2011).  In deciding whether to exercise this discretion, courts in the Seventh Circuit consider five factors:

(i)      Whether the judgment would settle the controversy;

(ii)     Whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

(iii)    Whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata;

(iv)    Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and

(v)     Whether there is an alternative remedy that is better or more effective.

---

[8] In bringing this action, ABS created a justiciable dispute concerning the scope of the Contract and enforceability of its terms.  Thus, to fully protect its interests and pursue its rights under the Contract, Inguran filed a lawsuit against ABS on August 29, 2014 in the U.S. District Court for the Southern District of Texas.  ABS likely will argue that in doing so, Inguran confirmed the justiciability of ABS' claims here.  However, the law is well-settled that justiciability must have existed at the time ABS commenced this action, and that ABS may not rely on post-filing acts to establish a case or controversy as of the date of its original complaint.  *See Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1384 (Fed. Cir. 2010) (holding that the defendant's post-filing initiation of a separate lawsuit against the plaintiff "did not establish an actual controversy at the time of the [plaintiff's] original complaint, and that jurisdiction based on subsequent events did not relate back to the filing date of the initial complaint"); *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 906 (Fed. Cir. 2014) ("In concluding that jurisdiction existed in this case, the district court relied heavily on DataTern's conditional counterclaims, its reference to 'infringement' in the scheduling order, and its refusal to grant Appellees a covenant not to sue—all post-complaint facts.  A declaratory judgment plaintiff must plead facts sufficient to establish jurisdiction at the time of the complaint, and post-complaint facts cannot create jurisdiction where none existed at the time of filing."); *Breckenridge Pharm., Inc. v. Everett Labs., Inc.*, 2009 WL 654214, at *5-6 (S.D. Fla. Mar. 11, 2009) (rejecting the plaintiff's argument that the defendant-patentee's subsequent filing of an infringement action in a second forum showed a case or controversy on the day the plaintiff filed its declaratory judgment action).

*Marion T, LLC v. Thermoforming Mach. & Equip., Inc.*, 2014 WL 3557780, at *7 (N.D. Ind. July 17, 2014).

28.     Here, these factors militate against the Court exercising its discretion under the Declaratory Judgment Act.  First, the Court's rulings on Counts 3 through 5, even if in ABS's favor, would not resolve the antitrust claim and therefore would not end the litigation.  Second, there are no allegations that, when the Complaint was filed, Inguran either contested ABS's right to develop the laser-based technology or contended that ABS is liable for liquidated damages.  Thus, the Court's rulings on these issues would be purely advisory and therefore would not serve a useful purpose.

29.     Third, ABS's failure to give Inguran advance notice of its alleged dispute indicates that it filed this action merely to establish venue in its home state.  That ABS then waited six weeks to serve its Complaint further demonstrates that ABS merely is using this lawsuit as a bargaining chip in attempting to renegotiate the Contract.

30.     Fourth, Counts 3, 4, and 5, respectively, ask a federal court in Wisconsin to construe a Texas contract, a Texas statute, and the current state of Texas common law on the enforceability of liquidated damages clauses.  All these issues would best be left to a Texas court.

31.     Fifth, ABS clearly has a more effective alternative remedy.  Its federal Sherman Act claim—with respect to which ABS has requested damages and injunctive relief—is based on the same issues ABS raises in its declaratory judgment claims.

## CONCLUSION

For these reasons, Inguran respectfully requests that the Court dismiss with prejudice Counts 2 through 5 of ABS' Complaint.

DATED:  August 29, 2014                   Respectfully submitted,

                                           BOARDMAN & CLARK LLP
                                           By:

                                           */s/ Sarah A. Zylstra*
                                           Sarah A. Zylstra, State Bar No. 1033159
                                           Boardman & Clark LLP
                                           One South Pinckney, Suite 410
                                           P.O. Box 927
                                           Madison, Wisconsin  53701-0927
                                           (608) 257-9521
                                           szylstra@boardmanclark.com


                                           Kirt S. O'Neill
                                           Texas State Bar No. 00788147
                                           *(pro hac appl. pending)*
                                           Daniel L. Moffett
                                           Texas State Bar No. 24051068
                                           *(pro hac appl. pending)*
                                           Fairley Spillman
                                           District of Columbia Bar No. 384879
                                           *(pro hac appl. pending)*
                                           Jamie L. Duncan III
                                           Texas State Bar No. 24059700
                                           *(pro hac appl. pending)*
                                           Clayton N. Matheson
                                           Texas State Bar No. 24074664
                                           *(pro hac appl. pending)*
                                           AKIN GUMP STRAUSS
                                           HAUER & FELD, L.L.P.
                                           300 Convent Street, Suite 1600
                                           San Antonio, Texas 78205
                                           Telephone: (210) 281-7000
                                           Facsimile: (210) 224-2035
                                           koneill@akingump.com
                                           jduncan@akingump.com
                                           cmatheson@akingump.com

                                           **ATTORNEYS FOR INGURAN, LLC**

15

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel of record via the Court's CM/ECF system on August 29, 2014.

/s/ *Sarah A. Zylstra*
Sarah A. Zylstra, State Bar No. 1033159