**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| ABS GLOBAL, INC., | § | |
| | § | |
| Plaintiff/Counterclaim Defendant | § | |
| | § | |
| v. | § | Case No.3:14-cv-00503 |
| | § | |
| INGURAN, LLC, d/b/a SEXING | § | |
| TECHNOLOGIES, | § | |
| | § | |
| Defendant/Counterclaim and Third-Party Plaintiff | § | JURY TRIAL DEMANDED |
| | § | |
| v. | § | |
| | § | |
| GENUS PLC | § | |
| | § | |
| Third-Party Defendant | § | |

---

**XY, LLC'S ANSWER TO SUPPLEMENTAL COMPLAINT**
**AND**
**COUNTERCLAIMS IN INTERVENTION**

---

XY, LLC ("XY") by and through its counsel, hereby submits its Answer to ABS Global, Inc.'s ("ABS") Supplemental Complaint.  XY also submits its Counterclaims in Intervention.

## <u>NATURE OF THE ACTION</u>

1.     XY admits paragraph 1 of the Complaint.

2.     XY admits paragraph 2 of the Complaint.

3.     XY admits that technologies have emerged for processing bull semen.  XY admits ABS has identified the term "Sexed Bovine Semen" as meaning "bovine semen that has been processed so that it contains viable sperm cells that are predominantly female (or male)."  XY denies the remainder of paragraph 3 of the Complaint.

4.      XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 4 of the Complaint, and therefore denies the same.

5.      XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 5 of the Complaint, and therefore denies the same.

6.      XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 6 of the Complaint, and therefore denies the same.

7.      XY admits that Inguran is in the business of processing raw bull ejaculate and that Inguran has entered into Semen Sorting Contracts with some sellers of bovine semen in the U.S. to provide its processing services.  XY denies the remainder of paragraph 7 of the Complaint.

8.      XY denies paragraph 8 of the Complaint.

9.      XY denies paragraph 9 of the Complaint.

10.     XY denies paragraph 10 of the Complaint.

11.     XY denies paragraph 11 of the Complaint.

12.     XY admits that Inguran has obtained, exclusively licensed, or internally developed patents related to processing raw bovine ejaculate.  XY denies the remainder of paragraph 12 of the Complaint.

13.     XY admits that it is a wholly owned subsidiary of Inguran.  XY admits its website includes the words "XY LLC is the master licensee in control of all sperm sorting in non-human mammals worldwide."  XY denies the remainder of paragraph 13 of the Complaint.

14.     XY lacks knowledge or information sufficient to admit or deny the allegations in of paragraph 14 of the Complaint, and therefore denies the same.

15.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 15 of the Complaint, and therefore denies the same.

16.     XY denies paragraph 16 of the Complaint.

17.     XY denies paragraph 17 of the Complaint.

18.     XY denies paragraph 18 of the Complaint.

## THE PARTIES

19.     XY admits ABS contends it is a Delaware corporation with a principal place of business in De Forest, Wisconsin.

20.     XY admits paragraph 20 of the Complaint.

## JURISDICTION AND VENUE

21.     XY admits ABS asserts claims under 15 U.S.C. §§ 2, 15, and 26.  XY denies the remainder of paragraph 21 of the Complaint.

22.     XY denies paragraph 22 of the Complaint.

23.     XY admits that ABS seeks declaratory judgment.  XY lacks knowledge or information sufficient to admit or deny the remainder of paragraph 23 of the Complaint, and therefore denies the same.

24.     XY admits that ABS seeks declaratory judgment.  XY lacks knowledge or information sufficient to admit or deny the remainder of paragraph 24 of the Complaint, and therefore denies the same.

25.     XY admits that ABS seeks declaratory judgment.  XY lacks knowledge or information sufficient to admit or deny the remainder of paragraph 25 of the Complaint, and therefore denies the same.

26.     XY admits that ABS seeks declaratory judgment.  XY lacks knowledge or information sufficient to admit or deny the remainder of paragraph 26 of the Complaint, and therefore denies the same.

27.     XY admits that ABS makes a breach of contract claim.  XY lacks knowledge or information sufficient to admit or deny the remainder of paragraph 27 of the Complaint, and therefore denies the same.

28.     XY lacks knowledge or information sufficient to admit or deny the remainder of paragraph 28 of the Complaint, and therefore denies the same.

29.     XY admits Inguran is registered to do business in Wisconsin and that Inguran has a registered agent for service of process in Wisconsin.  XY admits that Inguran maintains a laboratory at ABS's facilities in DeForest, Wisconsin.  XY denies the remainder of paragraph 29 of the Complaint.

30.     XY denies paragraph 30 of the Complaint.

31.     XY denies paragraph 31 of the Complaint.

32.     XY admits that venue is proper in this district, but denies the remainder of paragraph 32 of the Complaint.

## EFFECT ON INTERSTATE COMMERCE

33.     XY denies paragraph 33 of the Complaint.

## RELEVANT MARKET

34.     XY denies paragraph 34 of the Complaint.

35.     XY admits that artificial insemination may include impregnating a cow or heifer with semen obtained through human intervention.  XY further admits that artificial insemination is commonly used for producing dairy calves and less commonly used for producing beef calves. XY lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 35 of the Complaint, and therefore denies the same.

36.     XY admits paragraph 36 of the Complaint.

37.     XY admits that raw bovine ejaculate contains roughly equal proportions of X and Y sperm.  XY further admits that a cow or heifer impregnated naturally or through artificial insemination with conventional semen is generally as likely to give birth to a male calf or a female calf.  XY denies the remainder of paragraph 37 of the Complaint.

38.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 38 of the Complaint, and therefore denies the same.

39.     XY admits paragraph 39 of the Complaint.

40.     XY denies paragraph 40 of the Complaint.

41.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 41 of the Complaint, and therefore denies the same.

42.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 42 of the Complaint, and therefore denies the same.

43.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 43 of the Complaint, and therefore denies the same.

44.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 44 of the Complaint, and therefore denies the same.

45.     XY denies paragraph 45 of the Complaint.

46.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 46 of the Complaint, and therefore denies the same.

47.     XY denies paragraph 47 of the Complaint.

48.     XY denies paragraph 48 of the Complaint.

49.     XY denies paragraph 49 of the Complaint.

50.     XY denies paragraph 50 of the Complaint.

51.     XY denies paragraph 51 of the Complaint.

52.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 52 of the Complaint and therefore denies the same.

53.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 53 of the Complaint and therefore denies the same.

54.     XY denies paragraph 54 of the Complaint.

## MONOPOLY POWER

55.     XY denies paragraph 55 of the Complaint.

56.     XY denies paragraph 56 of the Complaint.

57.     XY denies paragraph 57 of the Complaint.

58.     XY denies paragraph 58 of the Complaint.

59.     XY denies paragraph 59 of the Complaint.

60.     XY denies paragraph 60 of the Complaint.

61.     XY denies paragraph 61 of the Complaint.

62.     XY denies paragraph 62 of the Complaint.

## EXCLUSIONARY CONDUCT

63.     XY denies paragraph 63 of the Complaint.

64.     XY denies paragraph 64 of the Complaint.

65.     XY denies paragraph 65 of the Complaint.

66.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 66 of the Complaint and therefore denies the same.

67.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 67 of the Complaint and therefore denies the same.

68.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 68 of the Complaint and therefore denies the same.

69.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 69 of the Complaint and therefore denies the same.

70.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 70 of the Complaint and therefore denies the same.

71.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 71 of the Complaint and therefore denies the same.

72.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 72 of the Complaint and therefore denies the same.

73.     XY denies paragraph 73 of the Complaint.

74.     XY admits that XY, Inc. was acquired by Inguran in 2007.  XY admits that XY, Inc. had granted non-exclusive licenses to some of its patents to certain licensees in the U.S.  XY denies the remainder of paragraph 74 of the Complaint.

75.     XY admits that the license to Trans Ova Genetics was terminated in November 2007.  XY denies the remainder of paragraph 75 of the Complaint.

76.     XY admits XY, Inc. was converted to XY, LLC in 2010.  XY denies the remainder of paragraph 76 of the Complaint.

77.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 77 of the Complaint and therefore denies the same.

78.     XY admits that Inguran purchased certain patents from Monsanto in 2008.  XY denies the remainder of paragraph 78 of the Complaint.

79.     XY admits Inguran owns certain non-U.S. patents.  XY admits that its website includes the words "XY LLC is the master licensee in control of all sperm sorting in non-human mammals worldwide."  XY denies the remainder of paragraph 79 of the Complaint.

80.     XY denies paragraph 80 of the Complaint.

81.     XY denies paragraph 81 of the Complaint.

82.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 82 of the Complaint and therefore denies the same.

83.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 83 of the Complaint and therefore denies the same.

84.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 84 of the Complaint and therefore denies the same.

85.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 85 of the Complaint and therefore denies the same.

86.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 86 of the Complaint and therefore denies the same.

87.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 87 of the Complaint and therefore denies the same.

88.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 88 of the Complaint and therefore denies the same.

89.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 89 of the Complaint and therefore denies the same.

## HARM TO COMPETITION

90.     XY denies paragraph 90 of the Complaint.

91.   XY denies paragraph 91 of the Complaint.

## ANTITRUST INJURY TO ABS

92.   XY denies paragraph 92 of the Complaint.

93.   XY denies paragraph 93 of the Complaint.

94.   XY denies paragraph 94 of the Complaint.

95.   XY denies paragraph 95 of the Complaint.

## COUNT 1

## Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2

96.   XY incorporates by reference its responses to paragraphs 1-95 of the Complaint.

97.   XY admits that ABS is a customer for Inguran's services for processing raw

bovine ejaculate.  XY denies the remainder of paragraph 97 of the Complaint.

98.   XY denies paragraph 98 of the Complaint.

99.   XY denies paragraph 99 of the Complaint.

100.   XY denies paragraph 100 of the Complaint.

101.   XY denies paragraph 101 of the Complaint.

102.   XY denies paragraph 102 of the Complaint.

## COUNT 2

## Unfair Competition Under the Common Law of Wisconsin

103.   XY incorporates by reference its responses to paragraphs 1-102 of the Complaint.

104.   XY denies paragraph 104 of the Complaint.

105.   XY denies paragraph 105 of the Complaint.

106.   XY denies paragraph 106 of the Complaint.

## COUNT 3

### Declaratory Judgment That the Contract Between ST and ABS Does Not Prohibit ABS From Commercializing Its Technology for Producing Sexed Bovine Semen

107.    XY incorporates by reference its responses to paragraphs 1-106 of the Complaint.

108.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 108 of the Complaint and therefore denies the same.

109.    Paragraph 109 is purely a legal assertion to which no response is required.  To the extent paragraph 109 contains any factual allegations, XY denies them.

110.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 110 of the Complaint and therefore denies the same.

111.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 111 of the Complaint and therefore denies the same.

112.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 112 of the Complaint and therefore denies the same.

113.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 113 of the Complaint and therefore denies the same.

114.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 114 of the Complaint and therefore denies the same.

115.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 115 of the Complaint, and therefore denies the same.

116.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 116 of the Complaint and therefore denies the same.

117.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 117 of the Complaint and therefore denies the same.

118.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 118 of the Complaint and therefore denies the same.

## COUNT 4

### Declaratory Judgment That the Contract's Restrictions on the Commercialization of ABS Research Violate the Texas Covenants Not to Compete Act

119.     XY incorporates by reference its responses to paragraphs 1-118 of the Complaint.

120.     XY admits the Texas Covenants Not to Compete Act, Tex. Bus. & Com. Code §15.50(a), includes the language cited by ABS in paragraph 120 of the Complaint.

121.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 121 of the Complaint and therefore denies the same.

122.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 122 of the Complaint and therefore denies the same.

123.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 123 of the Complaint and therefore denies the same.

124.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 124 of the Complaint and therefore denies the same.

125.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 125 of the Complaint and therefore denies the same.

126.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 126 of the Complaint and therefore denies the same.

127.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 127 of the Complaint and therefore denies the same.

128.     XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 128 of the Complaint and therefore denies the same.

## COUNT 5

### Declaratory Judgment That the Contract's Liquidated Damages Provisions Are Unenforceable Under the Common Law of Texas

129.    XY incorporates by reference its responses to paragraphs 1-128 of the Complaint.

130.    Paragraph 130 is a purely a legal assertion to which no response is required.  To the extent paragraph 130 contains any factual allegations, XY denies them.

131.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 131 of the Complaint and therefore denies the same.

132.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 132 of the Complaint and therefore denies the same.

133.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 133 of the Complaint and therefore denies the same.

134.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 134 of the Complaint and therefore denies the same.

135.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 135 of the Complaint and therefore denies the same.

136.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 136 of the Complaint and therefore denies the same.

137.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 137 of the Complaint and therefore denies the same.

138.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 138 of the Complaint and therefore denies the same.

139.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 139 of the Complaint and therefore denies the same.

## COUNT 6

### Declaratory Judgment That No Liquidated Damages Are Due Until the Expiration or Termination of the Contract

140.    XY incorporates by reference its responses to paragraphs 1-139 of the Complaint.

141.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 141 of the Complaint and therefore denies the same.

142.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 142 of the Complaint and therefore denies the same.

143.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 143 of the Complaint and therefore denies the same.

144.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 144 of the Complaint and therefore denies the same.

145.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 145 of the Complaint and therefore denies the same.

146.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 146 of the Complaint and therefore denies the same.

## COUNT 6

### Breach of Contract for Failure to Apply Advance as a Credit Against Invoices for Sorted Semen

147.    XY incorporates by reference its responses to paragraphs 1-146 of the Complaint.

148.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 148 of the Complaint and therefore denies the same.

149.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 149 of the Complaint and therefore denies the same.

150.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 150 of the Complaint and therefore denies the same.

151.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 151 of the Complaint and therefore denies the same.

152.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 152 of the Complaint and therefore denies the same.

153.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 153 of the Complaint and therefore denies the same.

154.    XY lacks knowledge or information sufficient to admit or deny the allegations in paragraph 154 of the Complaint and therefore denies the same.

## JURY DEMAND

XY agrees with ABS's demand for trial by jury, and XY also demands a jury trial as to all issues so triable.

## AFFIRMATIVE DEFENSES

For its defenses, XY incorporates by reference as if fully set forth herein its responses to Paragraphs 1-154 to the Complaint. Without assuming any burden other than that imposed by operation of law, XY asserts these affirmative defenses without admitting that XY bears the burden of proof on any of them.

## FIRST AFFIRMATIVE DEFENSE

### (Acquiescence, Estoppel, Laches, Waiver)

155.    ABS is barred from asserting its claims against XY based on the doctrines of acquiescence, estoppel, laches, and waiver.

## SECOND AFFIRMATIVE DEFENSE

### (Statute of Limitations)

156.    ABS is barred from asserting its claims against XY based on the statute of limitations.

## THIRD AFFIRMATIVE DEFENSE

### (Unclean Hands)

157.    ABS is barred from asserting its claims against XY based on the doctrine of unclean hands.

## FOURTH AFFIRMATIVE DEFENSE

### (In Pari Delicto)

158.    ABS is barred from asserting its claims against XY based on the doctrine of *in pari delicto*.

## FIFTH AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

159.    ABS has failed to state a claim upon which relief can be granted.

## SIXTH AFFIRMATIVE DEFENSE

### (No Anticompetitive Conduct)

160.    At all times relevant to ABS's claims, XY's conduct was lawful, in good faith, was justified by legitimate purposes, was pro-competitive, constituted bona fide business competition, and lacked any wrongful intent.

## SEVENTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

161.    ABS would be unjustly enriched if allowed to recover any relief claimed to be due under its claims.

## EIGHTH AFFIRMATIVE DEFENSE

### (Competition)

162.    ABS's claims of antitrust and unfair competition are barred, in whole or in part, because the alleged conduct that is the subject of the Complaint did not lessen competition in relevant market or markets.

## NINTH AFFIRMATIVE DEFENSE

### (Relevant Market)

163.    The purported relevant market alleged in the Complaint is not a relevant antitrust market, and ABS cannot carry its burden of defining a proper relevant market.

## TENTH AFFIRMATIVE DEFENSE

### (No Market Power)

164.    XY does not have market power or monopoly power in any properly defined relevant market.

## ELEVENTH AFFIRMATIVE DEFENSE

### (No Injury)

165.    ABS's claims are barred, in whole or in part, because ABS has not suffered an injury-in-fact or antitrust injury traceable to allegedly unlawful conduct of XY.

## TWELFTH AFFIRMATIVE DEFENSE

### (No Damages)

166.    Any damages that ABS alleges to have suffered are too remote, speculative, and/or uncertain to allow recovery.  Such damages are not capable of ascertainment and allocation.

## XY'S COUNTERCLAIMS IN INTERVENTION

Defendant and Counterclaim Plaintiff XY hereby asserts the following counterclaims against ABS:

### PARTIES

167.    XY, LLC ("XY") is a limited liability company organized under Delaware law, having an office and place of business at 9200 Broadway, Suite 111, San Antonio, Texas, 78217.

168.    Plaintiff and Counter-Defendant ABS is a corporation organized under Delaware law.  Its principal place of business is in DeForest, Wisconsin.

169.    On information and belief, Genus PLC ("Genus") is a corporation organized under the laws of the United Kingdom.  On information and belief, Genus's principal place of business is in Basingstoke in the United Kingdom.

### JURISDICTION AND VENUE

170.    The Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. § 271, et seq.

171.    This Court has personal jurisdiction over ABS at least because ABS is a resident in this district, and ABS has consented to jurisdiction in this judicial district by filing its Complaint against Inguran in this Court.

172.    This Court has personal jurisdiction over Genus at least because Genus regularly solicits and conducts business in this District and has at least minimum contacts with this District.  Genus is ABS's parent company, and directs and controls ABS as its bovine semen-sorting division.  In this District, Genus is a bound party to the 2012 Agreement executed between Inguran and ABS.  Genus also has instructed, directed and controlled the development and commercialization of ABS's semen sorting technologies.  Genus also maintains a joint

17

research and development operation with ABS and has participated in the patent infringement alleged below.

173.    Venue for these counterclaims is proper in this district.

## BACKGROUND

174.    Since the mid-1990s, XY has researched, developed, and commercialized a variety of technologies for sex-selection of non-human mammals, such as cattle and horses. These technologies include specialized machines that can produce sex-selected sperm samples based on differences in DNA content between sperm cells carrying an X chromosome (for producing female offspring) and those carrying a Y chromosome (for producing male offspring). These technologies also include methods for handling sperm cells and freezing them for later use in creating in-vitro or in-vivo fertilized embryos.

175.    Throughout its history, XY has licensed its intellectual property—including its patents and its confidential know-how—to a variety of companies.  Those licensees, in turn, use XY's intellectual property to create and commercialize sperm cell samples with a high likelihood of producing offspring of one sex or the other.  For example, Inguran has held a non-exclusive license to XY's intellectual property for over a decade, and since 2004 has commercialized the intellectual property by selling sex-selection services and sex-selected semen to companies like ABS.  In 2007, Inguran—a long-standing minority shareholder in XY—acquired all of XY's shares.  The acquisition, however, did not change the fundamentally distinct nature of XY's and Inguran's businesses; XY owns and licenses out its intellectual property, while Inguran uses that intellectual property to offer sex-selected goods and services.

176.    ABS is a "bull stud" company that harvests semen from bulls with desirable genetic traits and sells it to dairy farmers and cattle producers.  The farmers and cattlemen then

use the semen to breed calves with the same traits as the donor bulls.  Dairy farmers, for example, generally prefer to breed cows that can produce high volumes of milk.  ABS is one of the largest bull stud companies in the country, and Inguran has used XY's patented sex-selection technology to process semen provided by ABS into predominantly X- or Y-bearing semen.

177.    On information and belief, and as shown by the allegations in ABS's Complaint, ABS and its parent company, Genus, are creating, developing, and commercializing a laser-ablation method for sorting sperm cells.  In developing and attempting to commercialize its technology, ABS and Genus have created systems and used methods that infringe XY's patents.  ABS and Genus acquired semen-sorting patents and related technologies from companies called Arryx, Inc. and Haemonetics, Corp, and continued to develop and commercialize the technology they obtained.

178.    On information and belief, ABS and Genus have purchased and used flow cytometry equipment and media to sort semen by sex based on fluorescent emissions from stained sperm cells, and frozen the resulting sex-selected sperm samples.  ABS has completed field trials of its technology, and based upon ABS's complaint, ABS believes it can now successfully commercialize this technology.  Producing a commercially acceptable sperm sample requires being able to produce sex-selected samples of sperm cells at a high rate of speed without damaging the cells so much that they cease to be viable for fertilization.  A commercially acceptable sperm sample will oftentimes be frozen, so that it can be used with cows that are located far from the site of sex-selection, or are not in heat at the time the sperm cells are sex-selected.

179.    Furthermore, without any notice to XY, ABS recently filed petitions for *inter partes* review with the U.S. Patent and Trademark Office, requesting that the PTO begin

proceedings to review the validity of the two XY patents that are the subject of these counterclaims--U.S. Patent Nos. 7,820,425 and 7,195,920.  Through these *inter partes* review proceedings, ABS seeks a determination that the above-named XY patents are not valid.

**COUNT I – INFRINGEMENT OF U.S. PATENT NO. 7,820,425 AGAINST ABS**

180.    XY realleges and incorporates by reference the allegations of paragraphs 1-179.

181.    U.S. Patent No. 7,820,425 ("the '425 patent") is entitled "Method of Cryopreserving Selected Sperm Cells."

182.    The application that issued as the '425 patent was filed on November 24, 1999. The U.S. Patent and Trademark Office duly and legally issued the '425 patent on October 26, 2010.  The invention of the '425 patent generally relates to a method cryopreserving sperm cells that have been selected for a specific characteristic, including sex-selected sperm cells.

183.    XY owns all rights, title, and interest in the '425 patent, including the right to recover damages for infringement throughout the period of infringement.

184.    XY is informed and believes, and thereon alleges, that ABS directly infringes at least one claim of the '425 patent in violation of 35 U.S.C. § 271 by, among other things, making, using, selling, offering for sale, or importing into the U.S., without authority or license from Inguran, a method for cryopreserving sperm cells that have been selected for a specific characteristic, specifically sex-selected sperm cells, including all versions of its GSS Technology.

185.    On information and belief, ABS had actual knowledge of the '425 patent before the filing of these counterclaims.  At the very least, ABS submitted a petition to the United States Patent Office for *inter partes* review of the '425 patent on September 29, 2014, in which ABS undertook to interpret the claim language and scope of the '425 patent in detail.  In view of its

prior knowledge of the '425 patent and ABS's interpretation of the '425 patent, ABS acted despite an objectively high likelihood that its actions constituted infringement of the '425 patent.

186.    As a result of the infringement of the '425 patent by ABS, XY has been damaged. XY is entitled to damages under 35 U.S.C. § 284 in an amount that presently cannot be ascertained, but that will be determined at trial.

187.    XY is informed and believes, and thereon alleges, that ABS's infringement was willful and deliberate, and that this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees to XY pursuant to 35 U.S.C. § 285.

188.    As a result of the infringement of the '425 patent by ABS, XY has been irreparably harmed.  XY is entitled to a preliminary and permanent injunction forbidding ABS from further infringing the '425 patent.

**COUNT II – INFRINGEMENT OF U.S. PATENT NO. 7,195,920 AGAINST ABS**

189.    XY realleges and incorporates by reference the allegations of paragraphs 1- 188.

190.    U.S. Patent No. 7,195,920 ("the '920 patent") is entitled "Collection Systems for Cytometer Sorting of Sperm."

191.    The application that issued as the '920 patent was filed on December 31, 1997. The U.S. Patent and Trademark Office duly and legally issued the '920 patent on March 27, 2007.  The invention of the '920 patent generally relates to a method for preparing commercially acceptable sex-selected sperm samples by discriminating between sperm cells at a high rate and cushioning those cells from impact upon collection.

192.    XY owns all rights, title, and interest in the '920 patent, including the right to recover damages for infringement throughout the period of infringement.

193.    XY is informed and believes, and thereon alleges, that ABS directly infringes at least one claim of the '920 patent in violation of 35 U.S.C. § 271(a), by, among other things, making, using, selling, offering for sale, or importing into the U.S., without authority or license from Inguran, a method for preparing commercially acceptable sex-selected sperm samples by discriminating between sperm cells at a high rate and cushioning those cells from impact upon collection, including all versions of its GSS Technology.

194.    On information and belief, ABS had actual knowledge of the '920 patent before the filing of these counterclaims.  At the very least, ABS submitted a petition to the United States Patent Office for *inter partes* review of the '920 patent on July 14, 2014, in which ABS undertook to interpret the claim language and scope of the '920 patent in detail.  In view of its prior knowledge of the '920 patent and ABS's interpretation of the '920 patent, ABS acted despite an objectively high likelihood that its actions constituted infringement of the '920 patent.

195.    As a result of the infringement of the '920 patent by ABS, XY has been damaged. XY is entitled to damages under 35 U.S.C. § 284 in an amount that presently cannot be ascertained, but that will be determined at trial.

196.    XY is informed and believes, and thereon alleges, that ABS's infringement was willful and deliberate, and that this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees to XY pursuant to 35 U.S.C. § 285.

197.    As a result of the infringement of the '920 patent by ABS, XY has been irreparably harmed.  XY is entitled to a preliminary and permanent injunction forbidding ABS from further infringing the '920 patent.

**COUNT III– INFRINGEMENT OF U.S. PATENT NO. 7,820,425 AGAINST GENUS**

198.    XY realleges and incorporates by reference the allegations of paragraphs 1-197.

199.    U.S. Patent No. 7,820,425 is entitled "Method of Cryopreserving Selected Sperm Cells."

200.    The application that issued as the '425 patent was filed on November 24, 1999. The U.S. Patent and Trademark Office duly and legally issued the '425 patent on October 26, 2010.  The invention of the '425 patent generally relates to a method cryopreserving sperm cells that have been selected for a specific characteristic, including sex-selected sperm cells.

201.    XY owns all rights, title, and interest in the '425 patent, including the right to recover damages for infringement throughout the period of infringement.

202.    XY is informed and believes, and thereon alleges, that Genus directly infringes at least one claim of the '425 patent in violation of 35 U.S.C. § 271 by, among other things, making, using, selling, offering for sale, or importing into the U.S., without authority or license from Inguran, a method for cryopreserving sperm cells that have been selected for a specific characteristic, specifically sex-selected sperm cells, including all versions of its GSS Technology.

203.    On information and belief, Genus had actual knowledge of the '425 Patent before the filing of these counterclaims.  Genus has been well aware of XY's patents since at least September 29, 2014, when ABS, Genus's wholly-owned subsidiary and bovine semen division, submitted a petition to the United States Patent Office for *inter partes* review of the '425 Patent. ABS identified Genus as its parent company when identifying real parties in interest to the *inter partes* review of the '425 Patent.  In view of its prior knowledge of the '425 Patent, and ABS's and Genus's interpretation of the '425 Patent, Genus acted despite an objectively high likelihood that its actions constituted infringement of the '425 Patent.

204.    As a result of the infringement of the '425 Patent by Genus, XY has been damaged.  XY is entitled to damages under 35 U.S.C. § 284 in an amount that presently cannot be ascertained, but that will be determined at trial.

205.    XY is informed and believes, and thereon alleges, that Genus's infringement was willful and deliberate, and that this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees to XY pursuant to 35 U.S.C. § 285.

206.    As a result of the infringement of the '425 Patent by Genus, XY has been irreparably harmed.  XY is entitled to a preliminary and permanent injunction forbidding Genus from further infringing the '425 Patent.

**COUNT IV– INFRINGEMENT OF U.S. PATENT NO. 7,195,920 AGAINST GENUS**

207.    XY realleges and incorporates by reference the allegations of paragraphs 1-206.

208.    U.S. Patent No. 7,195,920 ("the '920 patent") is entitled "Collection Systems for Cytometer Sorting of Sperm."

209.    The application that issued as the '920 patent was filed on December 31, 1997. The U.S. Patent and Trademark Office duly and legally issued the '920 patent on March 27, 2007.  The invention of the '920 patent generally relates to a method for preparing commercially acceptable sex-selected sperm samples by discriminating between sperm cells at a high rate and cushioning those cells from impact upon collection.

210.    XY owns all rights, title, and interest in the '920 patent, including the right to recover damages for infringement throughout the period of infringement.

211.    XY is informed and believes, and thereon alleges, that Genus directly infringes at least one claim of the '920 patent in violation of 35 U.S.C. § 271(a), by, among other things, making, using, selling, offering for sale, or importing into the U.S., without authority or license

24

from Inguran, a method for preparing commercially acceptable sex-selected sperm samples by discriminating between sperm cells at a high rate and cushioning those cells from impact upon collection, including all versions of its GSS Technology.

212.    On information and belief, Genus had actual knowledge of the '920 Patent before the filing of these counterclaims.  Genus has been well aware of XY's patents since at least  July 14, 2014, when ABS, Genus's wholly-owned subsidiary and bovine semen division, submitted a petition to the United States Patent Office for *inter partes* review of the '920 Patent.  ABS identified Genus as its parent company when identifying real parties in interest to the *inter partes* review of the '920 Patent.  In view of its prior knowledge of the '920 Patent, and ABS's and Genus's interpretation of the '920 Patent, Genus acted despite an objectively high likelihood that its actions constituted infringement of the '920 Patent.

213.    As a result of the infringement of the '920 Patent by Genus, XY has been damaged.  XY is entitled to damages under 35 U.S.C. § 284 in an amount that presently cannot be ascertained, but that will be determined at trial.

214.    XY is informed and believes, and thereon alleges, that Genus's infringement was willful and deliberate, and that this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees to XY pursuant to 35 U.S.C. § 285.

215.    As a result of the infringement of the '920 Patent by Genus, XY has been irreparably harmed.  XY is entitled to a preliminary and permanent injunction forbidding Genus from further infringing the '920 Patent.

## JURY DEMAND

216.    Pursuant to Federal Rule of Civil Procedure 38(b), XY demands a jury trial.

**PRAYER**

For these reasons, XY respectfully requests that the Court enter judgment against ABS and Genus and award XY the following:

a.  Judgment that ABS is liable for infringement of the '425 patent;

b.  Judgment that ABS is liable for infringement of the '920 patent;

c.  Judgment that Genus is liable for infringement of the '425 patent;

d.  Judgment that Genus is liable for infringement of the '920 patent;

e.  Compensatory damages based on ABS's infringement of the '425 patent pursuant to 35 U.S.C. § 284;

f.  Compensatory damages based on ABS's infringement of the '920 patent pursuant to 35 U.S.C. § 284;

g.  Compensatory damages based on Genus's infringement of the '425 patent pursuant to 35 U.S.C. § 284;

h.  Compensatory damages based on Genus's infringement of the '920 patent pursuant to 35 U.S.C. § 284;

i.  Treble damages based on ABS's willful infringement of the '425 patent pursuant to 35 U.S.C. § 284;

j.  Treble damages based on ABS's willful infringement of the '920 patent pursuant to 35 U.S.C. § 284;

k.  Treble damages based on Genus's willful infringement of the '425 patent pursuant to 35 U.S.C. § 284;

l.  Treble damages based on Genus's willful infringement of the '920 patent pursuant to 35 U.S.C. § 284;

m.  Preliminary and permanent injunction that ABS and its officers, agents, employees, and attorneys, and all those in active concert or participation with them, from further infringing the '425 patent;

n.  Preliminary and permanent injunction that ABS and its officers, agents, employees, and attorneys, and all those in active concert or participation with them, from further infringing the '920 patent;

o.  Preliminary and permanent injunction that Genus and its officers, agents, employees, and attorneys, and all those in active concert or participation with them, from further infringing the '425 patent;

p.  Preliminary and permanent injunction that Genus and its officers, agents, employees, and attorneys, and all those in active concert or participation with them, from further infringing the '920 patent;

q.  Prejudgment and post-judgment interest on any award to XY;

r.  Exemplary damages;

s.  Attorneys' fees;

t.  Costs of suit; and

u.  All other relief the Court deems appropriate.

DATED:  May 6, 2015                    Respectfully submitted,

                                       */s/ Sarah A. Zylstra*
                                       Sarah A. Zylstra
                                       Wisconsin State Bar No. 1033159
                                       Boardman & Clark LLP
                                       One South Pinckney, Suite 410
                                       P.O. Box 927
                                       Madison, Wisconsin  53701-0927
                                       Telephone: (607) 257-9521
                                       szylstra@boardmanclark.com

Kirt S. O'Neill
Texas State Bar No. 00788147
*(admitted pro hac vice)*
Daniel L. Moffett
Texas State Bar No. 24051068
*(admitted pro hac vice)*
Clayton N. Matheson
Texas State Bar No. 24074664
*(admitted pro hac vice)*
AKIN GUMP STRAUSS
HAUER& FELD, LLP
300 Convent Street, Suite 1600
San Antonio, Texas 78205
Telephone: (210) 281-7000
Facsimile: (210) 224-2035
koneill@akingump.com
dmoffett@akingump.com
cmatheson@akingump.com

James L. Duncan III
Texas State Bar No. 24059700
*(admitted pro hac vice)*
AKIN GUMP STRAUSS
HAUER& FELD, LLP
1111 Louisiana Street, 44th Floor
Houston, Texas 77002
Telephone: (713) 220-5800
Facsimile:  (713) 236-0822
jduncan@akingump.com

Fairley Spillman
District of Columbia Bar No. 384879
*(admitted pro hac vice)*
AKIN GUMP STRAUSS
HAUER& FELD, LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile:  (202) 887-4288
fspillman@akingump.com

**ATTORNEYS FOR XY, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been served upon all counsel of record via the Court's CM/ECF system on May 6, 2015.


*/s/ Sarah A. Zylstra*
Sarah A. Zylstra, State Bar No. 1033159