IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ABS GLOBAL, INC.,

       Plaintiff/Counterclaim Defendant,        OPINION & ORDER

   v.

                                          14-cv-503-wmc

INGURAN, LLC,

       Defendant/Counterclaimant/Third-Party Plaintiff,

   and

XY, LLC,

       Intervening Defendant/Counterclaimant/Third-Party Plaintiff,

   and

CYTONOME/ST., LLC,

       Intervening Defendant,

   v.

GENUS PLC,

       Third-Party Defendant.

This matter is scheduled for trial to begin on August 1, 2016. In advance of the parties' final pretrial conference, which will take place on July 26, 2016, at 1:00 p.m., this order addresses ABS's motions in limine. (Dkt. #480.)

1.    **During the liability phase of the trial, ST and XY should be barred from presenting evidence about or otherwise referring to Kathy Mean.**

ABS concedes liability for misappropriation of trade secrets based on former XY employee Kathy Mean's use of XY's ejaculate addition protocols to prepare similar protocols in 2011 for ABS, her former employer, but asserts that it terminated Mean once it learned of her use of XY's protocols, and then hired Professor John Parks to develop new protocols independently using information in the public domain.  While the jury will need to resolve the parties' dispute regarding damages, ABS argues that Kathy Mean only has limited relevance to: (1) ST's breach of contract claim based on the confidentiality provision, since the XY protocols do not constitute information "that is disclosed by ST or its Affiliates to ABS" or (2) ABS's § 2 argument that the research restrictions of the Agreement constitute unlawful exclusionary conduct

ST responds that Ms. Mean's actions are relevant and not overly prejudicial because they:  (1) demonstrate the need for the non-compete protections; (2) rebut ABS's credibility attack on ST witnesses as to the business reasons for the non-compete provisions; and (3) rebut ABS's contention that it suffered antitrust injury caused by ST's alleged anticompetitive conduct because to prepare similar protocols for ABS in connection with its GSS technology and after terminating her, ABS had to work to recreate its protocols to avoid use of Means misappropriated XY protocols, which do not work well and have pushed the launch of the technology well beyond resolution of this trial.

2

Since ST persuasively established that evidence of Means' misappropriation is relevant to its defense of ABS's antitrust claim, ST will be permitted to submit evidence of Means' misappropriation in the liability phase of trial. Accordingly, this motion is DENIED.

> **2.   Defendants should be barred from suggesting that ABS's technical expert, Professor John Parks, obtained knowledge about XY ejaculate addition protocols during a 2010 consulting project for "A.I. Technologies."**

Parks's consulting work for A.I. Technologies, which he testified at his deposition "might have been an affiliate of ST," only consisted of three days of work on the post-thaw quality of bull semen, and thus his consulting work had nothing to do with ejaculate addition protocols. ST responds that Parks' knowledge of XY protocols is relevant ST's trade secret misappropriation claim -- if Parks claims that his work was independent of XY's protocols, ST should be able to pursue on cross examination whether his work was, in fact, independent.

While it appears that Parks' past work might fall within the scope of ABS's defense that he developed GSS independent of any knowledge about XY's protocols, ST will not be permitted to cross-examine Parks on his 2010 consulting project without *some* evidence that it involved access to or knowledge of XY's protocols. Any such proffer must be made in advance of trial. This motion is GRANTED without prejudice to a further proffer.

**3.      ST should be barred from offering testimony or making arguments based on the relative size of the parties or the fact that Genus or ABS are "big" companies.**

ABS anticipates that ST will characterize itself as a "little guy," or at least that ABS and Genus are relatively larger.   It correctly points out that in this circuit, "appealing to the sympathy of jurors through references to the relative wealth of the defendants in contrast to the relative poverty of the plaintiffs" is inappropriate. *Adams Labs, Inc. v. Jacobs Eng'g. Co.*, 761 F.2d 1218, 1226 (7th Cir. 1985).

ST responds, however, that the relative size of the parties is relevant to the reasonableness of the contract terms between the parties, as well as ABS's allegations about ST's market power.   Specifically, ST contends that evidence suggesting ABS is a sophisticated party will support its legitimate need for the contract terms, as well as that ST's small size is relevant to its antitrust defense that sexed and conventional semen are part of the same market (based on downstream competition).   ST cites to several cases permitting this type of evidence with respect to Sherman Act § 2 claims.   The court agrees.   ST may, therefore, offer this evidence for purposes of defining the relevant market, and the relative sizes of ST and ABS during negotiations and in the relevant market, but may not use this evidence to argue or appeal to the jury based on sympathy or other irrelevant purposes.   This motion is, therefore ,DENIED in part and GRANTED in part.

**4.      ST and XY should be barred from making emotional arguments or presenting witness commentary that is keyed to ABS being a "foreign-owned company."**

4

ST responds that the fact that Genus is U.K.-based bears on the scope of the relevant market.  In particular, ST points out that in defense of the antirust claim, it plans to submit evidence that ABS and Genus were able to enter into a separate sorting agreement in the U.K., and that more than half of ABS's sorted semen is sold overseas, with much of it going to the U.K.  It also points out the fact that Genus is a U.K.-based company is relevant to the validity of worldwide geographic scope of the Section 18 of the 2012 Agreement.

At the same time, ST concedes that it may not make the emotional-type arguments ABS seeks to bar.  Thus, while ST will be permitted to submit evidence that Genus is a U.K.-based company, the court will bar "emotional" arguments about the fact that ABS is a foreign-owned company or use of that fact for any other irrelevant purposes.  Accordingly, the motion is GRANTED in part and DENIED in part.

### 5. ST should be barred from offering testimony or making arguments that any of its license agreements with XY were approved by the US Department of Agriculture.

ABS points out that the USDA was required to "approve" ST's 2004 license agreement with XY, because the USDA had the contractual authority to review and approve sub-licenses of patents it owned.  Its concern is that this "approval" could be viewed as an implied repeal of the antitrust laws.  In response, ST argues that it needs to refer to the USDA's approval of ST's license with XY ("Lead License") to rebut ABS's assertions that ST entered into the Lead License to engage in anticompetitive conduct.  It also contends that it needs to include the USDA's approval to explain XY's statement

that it is the "master licensee in control of all sperm sorting in non-human mammals worldwide."  (O'Neill Decl., Ex. 6.)

The court agrees that the USDA's approval of a Lead License has some relevance. Moreover, any confusion as to relevance of USDA approval can be addressed during cross examination, argument and, if necessary, a limiting instruction.  Accordingly, the motion is DENIED.

> **6.    ST should be barred from offering testimony or making arguments that ST's conventional semen straws cost less and are of higher quality than ABS's conventional semen straws.**

ABS suspects that ST may try to suggest that ABS is a "bad company" because it sells inferior conventional semen straws at a high price.  ST responds that it will offer this evidence not to show that ABS produces a poor product in the conventional semen market, but to show that ST is a strong competitor.  ST asserts that this evidence is relevant to rebut ABS's assertion that the GSS technology will permit it to be a strong competitor in the United States' sexed semen market.  Although this argument may have *some* limited relevance as to ABS's claim for lost profit damages based on theoretical sales of sexed semen straws using its processing technology arising out of a violation of § 2 of the Sherman Act, ST has not explained the relevance of the quality of ABS's *conventional* semen straws for any other relevant purpose as to liability.  Accordingly, this motion will be GRANTED.

> **7.    ST should be barred from offering testimony or making arguments about supposed "barriers to entry" or customer contracts in Genus's porcine genetics business.**

6

ABS suspects that ST will attempt to compare its customer contracts to those of PIC, a Genus subsidiary that provides genetically superior pig breeding stock and technical support to commercial pork producers.  ABS argues that such evidence is irrelevant and potentially confusing because PIC is not a party, its business is unrelated to the industry involved here and it is *not* a monopolist.

ST responds that PIC's contracting practices are relevant insofar as they align with ST's contractual arrangements with ABS, which ABS asserts are improper.  ST also argues that similar industry practices are "routinely considered" in antitrust cases, but neither party has addressed in detail whether ST and PIC actually operate in the same industry.

Even so, the court agrees that industry practices are relevant to ABS's antitrust claim, and will allow ST to establish what are typical contracting practices in an arguably similar market, while at the same time ABS is free to point out that differences in those markets.  Accordingly, this motion is DENIED.

**8.  ST should be barred from offering testimony or making arguments about how ABS could have bought or licensed the XY patents, the Monsanto patents and the Cytonome patents that ST now controls.**

ABS argues that although it had the ability to acquire the patents that ST now controls, it would not have been improper for it to do so, while it was improper for ST to do so as it is a monopolist.  Thus, according to ABS, not only is such argument irrelevant, it will be confusing to the jury since different rules apply to monopolists.

ST responds that the evidence is nevertheless relevant to rebut ABS's claim that it engaged in anticompetitive conduct, and instead to show that: (1) ST's acquisitions were legitimate business decisions; and (2) ST's conduct was based on business acumen and risk taking, not anticompetitive conduct. In particular, ST claims that the evidence rebuts ABS's arguments that ST should have entered into non-exclusive licenses by establishing that ABS had access to the XY and Monsanto patents, and actually establishes that ST's decisions were legitimate because ABS, a competitor had considered doing the same thing.

The court agrees that availability of these patents to ABS has possible relevance to its claims of ST's monopoly power and it overcomes any risk of confusion. Therefore, the motion is DENIED.

> **9.    ST should be barred from offering testimony or making arguments about noncompete provisions in ABS employee contracts.**

ST wishes to offer evidence that ABS includes non-compete provisions in its own employee contracts for the same reason ST insists on it from its downstream competitors and potential competitors -- to protect confidential information. As ABS points out, however, the two types of contracts do not appear comparable. For one, ST's non-compete provisions relate to its customers and ABS's non-compete provisions relate to employees. Additionally, ST has not indicated that the terms of ABS's non-compete provisions are the same or similar to those in Section 18 of the 2012 Agreement. Accordingly, the court agrees that this evidence is potentially confusing and prejudicial.

8

Still, concern for misuse of confidential information is a component of both contracts. Accordingly, the court will allow ST to make that generally, if ST dwells on that evidence or argues in any way that is misleading, the court would consider a curative instruction. Accordingly, the motion is DENIED.

> ### 10. During the liability trial, ST should be barred from offering testimony or making arguments concerning ABS patent acquisitions or ABS exclusive patent licenses.

ABS similarly argues in support that its patent or license acquisitions should not be compared to ST's, because ABS is not a monopolist while ST is.  ST opposes the request, arguing that:  (1) ST's acquisition of patents is not necessarily improper; and (2) ABS's conduct is relevant to ST's defense that its acquisitions were consistent with other businesses in the industry.  The court agrees again.  This evidence is relevant to ST's defense, and ABS can address any concerns it has that the jury may confuse the type of behavior permissible for non-monopolists versus monopolists through argument, or if it becomes necessary, a curative instruction.  Accordingly, the motion is DENIED.

> ### 11. ST should be barred from offering testimony or making arguments about the level of ABS's research spending.

ABS suspects that ST will argue that it succeeded in sexed semen processing services because it devoted sufficient resources to research, unlike ABS, who attempted the same research but has not been as successful as ST.  Predictably, ST responds that this evidence is relevant to the anticompetitive conduct issue because ST seeks to establish that its conduct was not anticompetitive, but actually based on superior

business acumen and risk-taking.  In particular, ST would like to submit evidence that ABS's practice with respect to technology acquisition was to wait for others to develop it, then adopting it.  ST contends that that because they are competitors in the same industry, the example of ABS's practices is relevant to ST's attempt to prove that its business acumen was actually superior to others in the industry.  For the same reasons as #9 and #10 above, the motion is DENIED.

### 12. Cynthia Ludwig should be barred from testifying regarding Monsanto's patent licensing practices, including whether Monsanto would have been willing to license its patents to ST.

ABS points out that Ludwig's deposition testimony revealed that she actually had little personal knowledge about various aspects of Monsanto's licensing practices, and therefore she lacks personal knowledge as to Monsanto's decision to license or not to license its patent to ST.  ST responds that ABS has not effectively challenged her personal knowledge about Monsanto's plan, but rather is simply attacking her credibility, which is appropriately handled on cross-examination; not by exclusion.  On this record, the court is inclined to agree.

Although Ms. Ludwig acknowledged she lacked personal knowledge as to *some* of the specific questions posed to her about Monsanto's licensing practices, this does not establish that she had *no* personal knowledge about whether Monsanto would have been willing to license patents to ST.  Although the court will reserve until ST lags a foundation as to the basis of Ms. Ludwig's personal knowledge, if any, should ST

succeed, then ABS's remedy is limited to attacking her statement about Monsanto through cross-examination.  The motion is RESERVED.

### 13.   ST should be barred from offering evidence or arguments relating to "copying" of the '987 Patent.

Copying can be evidence of nonobviousness, but since Monsanto and ST never commercialized the '987 patent, there was no "specific product" to copy.  *See Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010).  According, ST stipulates to this motion, and will refrain from offering evidence or argument relating to any claim of "copying" of the '987 Patent.  However, ST reserves the right to offer evidence of the copying of ST's confidential information to support its claims of misappropriation, breach of confidentiality, and infringement of the '092 Patent claims.  With this caveat, the motion is GRANTED.

### 14.   ST should be barred from offering evidence or arguments relating to the commercial success for the '092 Patent.

ABS argues that ST cannot sufficiently show that any of its commercial success is attributable to the invention encompassed by the '092 Patent, rather than other patents in ST's portfolio.  Specifically, ABS points out that ST's own expert, Dr. Nolan, asserts in his report that "[t]he commercial success of XY and ST is strongly linked to faster and more accurate sort results than those obtained by practicing the claims of the '092 patent."  (Nolan Report (dkt. #293) ¶ 183.)  ABS also claims that Dr. Nolan admitted ST was commercially successful before practicing the '092 Patent, and he had no evidence that ST's profitability or pricing actually increased when ST started to do so.

11

Accordingly, ABS maintains that this lack of evidence warrants barring any testimony that the '092 Patent was commercially successful.

ST argues that ABS's motion only goes to the sufficiency of the evidence, which must be assessed at trial. ST also contends that ABS should have sought exclusion of this testimony through a *Daubert* motion or at summary judgment, that attempting to do so by motion *in limine* should be discouraged.

In the end, however, ABS points out that since ABS much establish the existence of a "nexus . . . between the merits of the claimed invention and the evidence of commercial success before that issue becomes relevant to the issue of obviousness," *Apple Inc. v. Samsung Elecs. Co.*, 816 F.3d 788, 810 (Fed. Cir. 2016), this evidence is plainly relevant. And since Dr. Nolan admitted that he did not perform *any* analysis as to how much of ST's commercial success is attributable to the '092 Patent, it does not appear that ST has any empirical evidence to back up the commercial success of the '092 Patent. Before completely barring ST from submitting evidence on this issue, however, the court will permit ST to make a proffer of evidence on this issue on or before the final pretrial conference in this case, scheduled for Tuesday, July 26th. Accordingly, this motion is RESERVED.

> **15.   In connection with ST's breach of confidentiality claim, ST should be limited to the ST confidential information that is discussed in the expert reports of ST's technical expert, John Nolan.**

After ABS received John Nolan's report describing four categories of ST's confidential information ABS allegedly used, ST's counsel confirmed in a letter dated

January 4, 2016, that "in the absence of discovery of additional confidentiality breaches subsequent to the date of this letter, ST does not intend to pursue categories of confidential information for ABS and Genus's breach of Section 16 of the 2012 Semen Sorting Agreement outside of the categories of confidential information identified in Dr. Nolan's report." (Dkt. 482-11.) ST agrees that its breach of contract case will not extend beyond Dr. Nolan's expert reports, with the caveat that if additional breaches of confidentiality come to light at trial, ST may assert the right to pursue those breaches. ST further states that ample evidence will be presented at trial about the 2012 Agreement's confidentiality provision and the types of confidential information it intended to protect, which ST does not view as precluded by this motion.

With these caveats in mind, the motion is GRANTED. ST is not, however, to offer evidence of, or claim breach of, ABS's disclosure of other confidential information without advance approval from the court outside the jury's presence.

> **16.** **In connection with XY's trade secret misappropriation claim, XY should be limited to the XY trade secrets that are discussed in the expert reports of XY's technical expert, John Nolan.**

In that same letter, ST's counsel stated, "XY will identify the grounds for its trade secret misappropriation claim in an expert report after the follow-up depositions of Kathy Mean and any other relevant ABS witnesses" (*see* Nolan Report (dkt. #440)). XY effectively stipulates to this motion as well, with the caveat that if other trade secret misappropriations come to light at trial, XY may assert the right to pursue those misappropriations. Taking into account that caveat, therefore, this motion is

13

GRANTED.  ST is not, however, to offer evidence of, or claim misappropriation of, other trade secrets without advance approval from the court outside the jury's presence.

> **17.   ST should be barred from relying on an "advice of counsel" defense for ABS's antitrust claims and from suggesting to the jury that ST's trial counsel helped negotiate the Agreement.**

ST's lead trial counsel, Kirt O'Neill, was personally involved in negotiating the 2012 Agreement between ABS and ST.   ABS seeks an order memorializing ST's assertions made in a letter that:  (1) it will not call its counsel or any Akin Gump attorneys as witnesses; and (2) will not rely on any advice of counsel defense to the Sherman Act claims (dkt. #482-13).  ABS also seeks to have Mr. O'Neill's name, Akin Gump's name, and the name of any other Akin Gump attorney who appears in the courtroom while the jury is present redacted from any document offered into evidence with regard to or concerning information about the negotiation of the 2012 Agreement.

ST agrees not to call Mr. O'Neill or any attorney from Akin Group as witnesses, and it will not rely on the advice of counsel defense regarding the Sherman Act claims. ST does object, however, to the redaction request because it could interrupt the narrative of such documents, create confusion and prejudice ST.  The court does not agree.  To the contrary, the inclusion of the names of ST's attorneys is far more likely to cause the jurors to question the presence of those names, and risks them creating their own inferences and narrative about the significance of their names appearing in relevant documents.  Accordingly, the motion is GRANTED.

18.  **ST should be barred from referring to the verdict in the Trans Ova litigation.**

ABS contends that the verdict in the Trans Ova litigation is irrelevant, as well as inadmissible if offered in subsequent proceedings as evidence of the facts underlying the judgment.  *See Graycas, Inc. v. Proud*, 826 F.2d 1560, 1567 (7th Cir. 1987) (civil judgments are "not usable in subsequent proceedings as evidence of the facts underlying the judgment; for as to those facts, the judgment is hearsay.") (citations omitted).

ST argues that the verdict tends to establish that Trans Ova terminated its own license and is also relevant as "rebuttal evidence" to ABS' monopolization claims.  (Dkt. #528, at 35.)  The nuances of ABS's hearsay claims need not be resolved, since the verdict form does not establish what ST claims.  While the jury found Trans Ova infringed the patent, it also found that XY breached the contract and that its claims of unjust enrichment and injunctive relief were barred by the doctrine of "unclean hands." (Dkt. #547-3, at 9.)  Accordingly, the court agrees with ABS that the verdict form is irrelevant.

Related to this motion is ABS's Motion to Preclude ST and XY from Relitigating Issue Resolved Against them in Final Judgment of Trans Ova Litigation (dkt. #546).  In particular, ABS points out that in the *Trans Ova Case* (*XY, LLC v. Trans Ova Genetics, LC*, No. 13-cv-876 (D. Colo.), the jury found that XY did not have the right to terminate its license agreement with Trans Ova when it did so in November.  According to ABS, ST plans to propose the opposite to this court, arguing that Trans Ova's material breach justified ST's decision to cause XY to terminate the license.  ABS argues that the doctrine

of issue preclusion bars ST and XY from arguing it justified in causing XY to attempt to terminate the Trans Ova license in 2007.  ABS's motion will be granted for that reason, as well as a lack of relevance and inadmissible hearsay.

> Issue preclusion has four elements:
>
> (1) the issue sought to be precluded is the same as an issue in the prior litigation;
> (2) the issue must have been actually litigated in the prior litigation;
> (3) the determination of the issue must have been essential to the final judgment; and
> (4) the party against whom estoppel is invoked must have been fully represented in the prior action.

*Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014).  According to ABS, the verdict form shows that the first two elements are fulfilled because the jury explicitly found that XY had not proven by a preponderance of the evidence that it had the right to terminate the license agreement with Trans Ova in November 2007.  (Dkt. #546, at 6.) ABS states that this finding was essential to the final judgment because it was necessary for the jury to award damages to Trans Ova.  Finally, ABS contends that both XY and ST were represented in the prior action because the same attorneys that represented XY and ST (until ST was dismissed from that case), currently represent them.  ABS contends that ST's dismissal from that suit does not change this result because ST, as the sole shareholder of XY, is in privity with XY.

ST represents that it does not intend to relitigate the verdict because it merely "demonstrates that Trans Ova removed itself as a potential entrant notwithstanding any breach by XY, through its own conduct."  (Dkt. 566, at 4-5.)  While that may be the

16

case, ST still has not established that the Trans Ova verdict (or any reference to it) is relevant to this dispute or does not constitute hearsay. Accordingly, the verdict in the Trans Ova case is irrelevant. Moreover, ST has failed to establish that issue preclusion does not apply, nor that the verdict form is either not hearsay or is admissible under a hearsay exception. The motion is GRANTED.

> **19. ST should be barred from arguing or suggesting that, because the U.S. Constitution refers to patents, their acquisition or assertion cannot violate the antitrust laws.**

According to ABS, in XY's litigation with Trans Ova in D. Colo., its expert apparently referred to the U.S. Constitution in answering that patents are "part of the competitive process." ABS argues that any reference to the Constitution would be irrelevant, confusing and prejudicial testimony because ST, as a monopolist, is barred from acquiring patents as a matter of law, and regardless, the showing of exclusionary conduct involves the weighing of anticompetitive versus pro-competitive effects. ST responds that the constitutional protection of patents is relevant to support its position that its actions were procompetitive.

Neither position is quite right. None of the *witnesses* at trial will be allowed to refer to the U.S. Constitution in answer to a question at trial. The court will not, however, preclude counsel from referring in opening to patent protections afforded by the U.S. Constitution and statutes. (Indeed, the jury video on patents does as much.) Nor will ST's counsel be precluded in closing from arguing as to the importance of patents. However, neither side may argue as to any "preclusive" impact of patent laws, nor to any

17

*per se* violations by a monopolist with respect to patent acquisitions, for reasons addressed in the court's summary judgment order. The court alone will state the law the jury will apply. Accordingly, the motion is DENIED in part and GRANTED in part.

> **20.   ST should be barred from referring to or offering evidence concerning the patent office's decision not to institute *inter partes* review ("IPR") of the '987 patent.**

ABS argues that ST should not be permitted to provide evidence related to ABS's petition with the Patent Office's Patent Trial and Appeal Board ("PTAB"), which sought *inter partes* review ("IPR") of ST's '987 Patent. ABS's petition was denied by PTAB because it had not demonstrated a reasonable likelihood of prevailing "on its assertion that any challenged claim of the '987 patent is unpatentable." In ABS's view, although the Patent Office's decision was not on the merits, the jury could construe it as a finding by the Patent Office that the patent was valid. The court agrees.

Any probative value of the PTAB ruling is far outweighed by the potential for unfair prejudice and risk of jury confusion because the IPR proceeding is subject to different standards, purposes and outcomes than the original prosecution and the court proceeding. ST attempts to distinguish the court's similar ruling in *WARF v. Apple* based on ABS's assertion of an antitrust claim is unavailing. In particular, ST does not explain how PTAB's decision is somehow more relevant to its defense of ABS's antitrust claim, beyond the general proposition that its patent was not reviewed by PTAB, which is the *same* ambiguous ruling the court found confusing and unfairly prejudicial in *WARF*.

ST also argues that because ABS intends to offer evidence of the IPR decisions on the '425 and '920 patents, even though parts of the case related to those patents have been stayed.  However, as will be explained below, ABS will be barred from submitting such evidence so the jury will not hear evidence related to the IPR proceedings for the '425 and '920 patents.  The motion is GRANTED.

### 21.   ST should be required to reduce the number of asserted claims for the two patents-in-suit to a reasonable number.

Although the court has narrowed the claims somewhat, ST is still asserting infringement of some 27 claims of the '092 patent and at least 4 claims of the '987 patent.  ABS assumes that ST intends to drop some of the asserted claims in light of the court's claims construction, but also states that "it would be helpful to the parties if the Court could provide some direction as to the number of claims that it would be reasonable to ask the jury to address during trial."  In response, ST offers to reduce the asserted claims if ABS similarly reduces the number of prior art references it asserts.

The court RESERVES ruling on this motion until the parties have had a chance to review the court's claim construction findings and confer with one another in an attempt to reach an agreement on this issue.  Otherwise, the court will address this issue in a telephonic conference at 10:00 a.m. on Thursday, July 28, 2016.

### 22.   ST should be barred from offering evidence or argument concerning the Canadian litigation between XY and Jesse Jia-Bei Zhu and companies affiliated with him.

ABS represents that XY had a licensee in Canada, IND Lifetech Inc., that breached its licensing agreement by submitting false royalty reports and making unauthorized use of XY's technology. XY apparently filed suit in Canada against the licensee and some related individuals and entities, and it was awarded substantial damages in 2010 for breach of contract and deceit. ABS also represents that XY has pursued litigation in Canada regarding further claims against Zhu.

ABS argues that the Canadian case is irrelevant here because: (1) neither Genus nor ABS was a party to those cases; and (2) the contract issues were different in that they involve breach of royalty and unpermitted use. ABS further argues that any evidence of Canadian litigation would be unfairly prejudicial because the suggestion that XY may have been the victim of fraud could generate undue sympathy from the jurors.

XY responds that the conduct upon which the Canadian case was litigated is relevant rebuttal evidence to ABS' claim of XY's exclusionary conduct. (Dkt. #528, at 40.) XY also argues that the Canadian case is relevant to rebut ABS' allegation that the non-compete language was an unjustified restriction on research, rather than a precaution against trade secret theft. XY points to their success in the Canadian litigation as evidence that fears of trade secret theft were well-founded. While XY will be permitted to discuss the difficulties and challenges regarding trade secret protection, including brief references by an appropriate executive or expert by way of reference, it is not permitted to go into the details of the Canadian case or other follow-on cases, nor will the court

admit evidence of the outcome of those cases unless ABS opens the door.  Accordingly, the motion is GRANTED.

> **23.    ST and XY should be barred from offering evidence or argument concerning *inter partes* reviews or post-grant reviews that they initiated in connection with patents of ABS or its affiliates.**

ABS argues that ST should not be permitted to submit evidence related to IPR proceedings because it is irrelevant.  ST responds that this should be a two way street, so that ABS should also be precluded from submitting evidence of IPRs against XY's '920 patent, a patent that has been stayed, as evidence that ST and XY assert "bad patents" to support ABS's antitrust claim.  The court agrees.  Accordingly, the court will GRANT both ABS's motion to exclude any evidence of IPR's initiated related to patents of ABS or its affiliates, as well as granting ST and XY's request to bar evidence of the IPR proceedings regarding the '425 and '920 patents.

> **24.    ST should be barred from offering evidence or argument concerning willful infringement during the jury trial.**

This motion is based on the Supreme Court's new test for willful infringement announced in *Halo Electronics, Inc. v. Pulse Electronics, Inc.,* No. 14-1513 (U.S., June 13, 2016) (rejecting the *Seagate* test, explaining that it "is unduly rigid, and it impermissibly encumbers the statutory grant of discretion to the courts.").  ST asserts that ABS willfully infringed the '987 and '092 patents and that evidence regarding willfulness should be presented during the jury trial.  ABS argues that the Supreme Court's decision in *Halo Electronics* rejected the two-prong test for willfulness established in *Seagate*, and creates a

new test that leaves nothing to be decided by a jury.  Instead of requiring an objective showing of recklessness as a question of law decided by the court, followed by a subjective prong which was a fact question for a jury, the Supreme Court certainly appears to have concluded that "willfulness" is now an exercise of discretion of the district court, which is reviewable on appeal for abuse of discretion.  *Id.* at 12-13. Consequently, ABS argues that willfulness should be addressed during the damages phase of the trial.

In contract, ST argues that ABS misinterprets the *Halo* decision.  In support, ST cites an unpublished from the Southern District of California that held it was proper to rely on a jury's finding of willfulness post-*Halo*.  *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 14-cv-02061-H-BGS, 2016 U.S. Dist. LEXIS 82532m at *44-46 (S.D. Cal. June 17, 2016).  Relying on *Presidio*, ST argues that the Supreme Court did not overturn the well-established precedent that willfulness, including the subjective knowledge of the defendant, is a question of fact for the jury.  *See id.* at *44-46; *see also Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1006-08 (Fed. Cir. 2012).  ST further argues it would be unworkable under the current trial schedule to present evidence regarding willfulness during the damages phase of the trial.  Finally, ST points out that ABS failed to identify a specific prejudice that it would suffer if evidence of willfulness was presented.

In an effort to address the impact of the *Halo* decision, however, the parties have neglected other important considerations that are relevant to willfulness:  the actual sale

of the infringing product; a request for a declaratory judgment before resumption of commercial activity related to the patent; and that the review of willfulness has long involved an exercise of discretion for the court first.  Specifically, ST has overlooked the fact that ABS has not proceeded with the commercialization of GSS technology before receiving a declaratory judgment from the court on the following:  (1) whether the contract with ST prohibits ABS from commercializing technology it developed in order to compete with ST; and (2) whether the contract with ST prohibits research and development of alternative products. (ABS Complaint (dkt. #1) at 1.)   If ABS has not commercialized the allegedly infringed product, ABS has no sales of said product and the question of willfulness appears largely, if not entirely, moot.

In short, *Halo* has not overruled the basic elements of willfulness that require egregious infringement behavior.   *See Halo*, 2016 WL 3221515, at *7.  Suspension of commercialization while seeking declaratory relief is not a flagrant disregard for the patented invention and potential infringement.  Rather, ABS is acting prudently and in careful regard of the patented invention.  Absent some further proffer by ST that would support such a claim, this matter lacks the kind of egregious behavior that would justify a finding of willfulness.  Regardless, the court agrees any determination of willfulness is better decided in the damages phase of trial.   Accordingly, the motion is thus GRANTED.

ORDER

IT IS ORDERED THAT plaintiff's Motions in Limine (dkt. #480) are GRANTED in part, DENIED in part and RESERVED in part as noted above. If needed, a telephonic conference will be held at 10:00 a.m. on Thursday, July 28, 2016, to address MIL #21. Plaintiff shall initiate the call to the court.

Dated this 22nd day of July, 2016.

BY THE COURT:

/s/

William M. Conley
District Judge

24