IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ABS GLOBAL, INC.,

          Plaintiff/Counterclaim Defendant,

    v.

INGURAN, LLC,

          Defendant/Counterclaimant/Third-Party Plaintiff,

   and

XY, LLC,

          Intervening Defendant/Counterclaimant/Third-Party Plaintiff,

   and

CYTONOME/ST., LLC,

          Intervening Defendant,

    v.

GENUS PLC,

          Third-Party Defendant.

OPINION AND ORDER

14-cv-503-wmc

This order addresses defendants' motions *in limine* (dkt. #488), motion to exclude witnesses and documents disclosed after close of discovery (dkt. #444), defendants' objection to ABS's § 282 notice (dkt. #509), and the parties' joint jury questionnaire (dkt. #519), as well as a revised process for streamlining objections to exhibits and deposition designations.

A.      **Defendants' Motions in Limine (dkt. #488)**

  1.      **Irrelevant ST and/or XY litigation.**

Defendants request that the court bar references to litigation involving ST and/or XY, arguing that it would be irrelevant, prejudicial and a waste of time.  In particular, they seek to bar evidence of these four cases:  (1) *Semex Alliance v. Elite Dairy Genomics, LLC*, NO. 3:14-cv-87 (S.D. Ohio); (2) *XY, LLC v. Ottenberg*, 11-CV-2920-RBJ-KMT (D. Colo.); (3) *Colo. State Univ. Research Found v. XY, LLC* (D. Colo.); and (4) *Monsanto Co. v. XY, Inc.*, No. 4:06-cv-992 (E.D. Mo.).  ABS objects, contending that defendants' prior litigation may be relevant to ABS's antitrust claim, in particular for purposes of impeaching a witness with prior testimony.

In the abstract, the court agrees with ABS that some *limited* evidence of these past lawsuits may prove relevant to its antitrust claim, as well as for purposes of impeachment, but because neither party provides concrete examples, it is not yet possible to evaluate whether specific evidence or testimony may be overly prejudicial.  Accordingly, the court RESERVES ruling on this motion.  During the final pretrial conference, both sides should be prepared to offer concrete examples of evidence claimed to be relevant to plaintiff's antitrust claim or an appropriate subject of impeachment.

  2.      **References to ST or XY as "litigious" or any similar characterization.**

Defendants seek to exclude any evidence or characterization that either ST or XY is "litigious," a "frequent filer" or similar criticism as both irrelevant and prejudicial.  ABS

2

contends that ST and XY's litigiousness is highly probative of measures taken to keep out prospective entrants to the U.S. sexed semen processing market.

As previously discussed, part of ABS's antitrust claim is that ST has maintained its market position by threatening litigation against potential competitors.  Most of the cases ST cites in support of excluding evidence of other litigation are in contexts where a party's litigiousness are not a relevant issue, but rather are offered for an improper or overly prejudicial purpose under the Rules of Evidence.  *See, e.g., Gay v. Chandra*, No. 05-CV-0150-MJR-DGW, 2009 WL 2868398, at *2 (S.D. Ill. Sept. 4, 2009) (deeming plaintiff's litigiousness irrelevant and allowing evidence of other lawsuits only for purposes of impeachment); *Mathis v. Phillips Chevrolet, Inc.*, 269 F.3d 771, 776, 775-77 (7th Cir. 2001) (finding plaintiff's discrimination claim and other litigation only marginally relevant and highly prejudicial); *Eng v. Scully*, 146 F.R.D. 74, 79 (S.D.N.Y. 1993) (excluding plaintiff's prior litigation as an inmate under Rule 403).

ST does cite one case in the patent context, *Kinetic Concepts, Inc. v. Bluesky Med. Corp.*, No. SA-03-CA-0832-RF, 2006 WL 6505348 (W.D. Tex. May 31, 2006), in which the plaintiffs sought and were granted an order barring any references to other lawsuits brought by the plaintiff on the ground that such evidence was irrelevant.  *Id.* at *3-4. Even in that case, however, the court *did* permit the defendants to submit evidence of plaintiffs' motivation in filing the present suit as relevant to proving plaintiff's belief that they were entitled to own the market, and this despite the fact defendant had dismissed its antitrust claims.  *Id.* at *3.

3

ABS has sufficiently argued the probative nature of what it would characterize as ST and XY's litigiousness with respect to asserting the exclusivity of sexing technology under its U.S. patent portfolio, but the relevance is limited to the merits of ABS's antitrust claim alone and the court will not allow such evidence to result in satellite litigation on each such lawsuit. Accordingly, the court will DENY ST and XY's motion, with the caveat that ABS must tread carefully with respect to this evidence by requiring an advance proffer and precluding any *argument* as to defendants so-called "litigiousness" until closing argument and even then only with respect to ABS's antitrust claim.

### 3.    Argument that any patents owned by ABS negate infringement of the patents asserted by ST in this case.

ST seeks to bar ABS from referring to patents related to ABS's GSS technology as part of its non-infringement defense, claiming that ABS's patents are irrelevant and potentially confusing to any infringement inquiry in this case given that it would be possible for the GSS technology to include features patented by ABS while simultaneously infringing defendants' patents. In response, ABS argues that its own patents are relevant in two ways. First, they are a possible defense to infringement should ST argue under the doctrine of equivalents. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 493 F.3d 1368, 1379-80 (Fed. Cir. 2007) ("when a device that incorporates the purported equivalent is in fact the subject of a separate patent, a finding of equivalency, while perhaps not necessarily legally foreclosed, is at least considerably more difficult to make out"); *Glaxo Wellcome, Inc. v. Andrx Pharms., Inc.*, 344 F.3d 1226, 1233 (Fed. Cir. 2003) (existence of a separate patent on the accused product "may be

4

weighed by the district court, particularly if there is an issue of 'insubstantial' change with respect to equivalency").  Second, ABS's patents related to GSS technology support its antitrust claim.  Specifically, ABS argues that evidence of its patents show that it has taken steps to enter the market that have been thwarted as a result of ST's anticompetitive actions, and thus that ABS suffered damages.

The first concern would appear best dealt with by a jury instruction from the court should a *specific* patented technology bar or limit any doctrine of equivalence claim.  The second is again difficult to assess in the abstract, including whether the evidence should be limited to the damages phase of trial.  Accordingly, the court will RESERVE and await specific proffers at the final pretrial conference.

### 4.    Any *per se* violations of the antitrust laws or statutes, particularly on patent acquisitions.

Defendants' request that the court prohibit ABS from referring to *per se* violations of antitrust laws or statutes because such statements:  (1) constitute instructions on the law that the court must provide; and (2) could confuse and mislead the jury as to ABS's burden of proof.  Not only does ABS agree with ST, the court has already ruled as much. Still, ABS would like to argue that it is "unlawful exclusionary conduct for a monopolist to acquire exclusive rights to patents relating to its monopoly."

In its summary judgment opinion, the court held that evidence of patent acquisitions by a monopolist is suggestive of anticompetitive conduct, but that such conduct is not, as a matter of law, unlawful.  Even if it were, the court will instruct the jury on the law.  Accordingly, while ABS may argue that ST's patent acquisitions

5

constituted anticompetitive behavior on the facts here, ABS may not refer to or argue that regardless of the scope, or ST's intended use or purpose, ST's acquisitions are, in and of themselves, unlawful.  Accordingly, the court will GRANT defendants' motion with respect to plaintiffs' use of the term *per se and* to any equivalent argument.

###   5.     *Inter partes* review proceedings of the '920 and '425 patents.

ST seeks to exclude evidence of IPR proceedings of the '920 and '425 patents, which are currently pending on appeal before the Federal Circuit.  *XY, LLC v. ABS Global, Inc.*, Case 16-1897 (Fed. Cir. 2016).  In support, ST correctly points out that the court has stayed proceedings related to these two patents.  It further states that because of the stay, ST and XY have yet to develop arguments related to these patents, meaning they have not conducted depositions or conducted discovery specific to the claims in those patents since the court granted the stay.  Thus, ST argues it would be grossly unfair to permit ABS to submit evidence related to those proceedings.  Moreover, ST asserts the probative value of the IPRs is limited.

While ABS contends that the IPR proceedings are relevant to its antitrust claim, the court still concludes that evidence of the IPR proceedings carries a high risk of undue prejudice and confusion, both because the standards involved in IPR proceedings are different and because the IPR proceedings have yet to be resolved.  *See Personalized Media Comms., LLC v. Zynga, Inc.*, No. 2:12-CV-00068-JRG, 2013 WL 10253110, at *1 (E.D. Tex. Oct. 30, 2013) ("While the pending *Inter Partes* Review may have some relevance, the Court finds that the danger of undue prejudice is extremely high and that danger

cannot be mitigated simply by the use of a limiting instruction.") (citations omitted). Accordingly, the motion is GRANTED absent ABS proposing some straightforward statement of which the court might take judicial notice as to the fact of *inter partes* proceedings involving the parties with respect to two other patents, and the existence of other patent disputes between ST and other bull studs.

> 6.  **Appeals to local prejudice, including any reference to XY or ST as "out-of-towners," "foreigners," or "out-of-state defendants," and reference to ABS or Genus as "locals."**

ABS essentially stipulates to this motion *in limine* unless it would preclude reference to ABS being a Madison-based company or to some of its witnesses living in the Madison area and working in DeForest.  Similarly, ABS argues that because the 2012 Agreement is governed by Texas law and ST and XY are based there, it should be able to make these points.  At the same time, ABS states that it has "no intention of making emotional arguments" to the jury concerning ST and XY being "foreigners," which is good since any reference by either side of the nature that is the subject of this motion will result in a swift curative instruction and disapprobation before the jury.

Accordingly, the motion will be GRANTED, and the court will also include this as a subject of inquiry during voir dire.

> 7.  **Any drug possession or sale investigation concerning an employee of ST's affiliate, GRI.**

ST is seeking to exclude evidence, arguments or references to any investigation concerning the possession or sale of drugs by any employee of ST or its affiliate GRI.

ABS indicates that it will likely agree to ST's request, but needs more facts to make an informed judgment as to whether this evidence could be relevant to its claims. The court will, therefore, GRANT this motion subject to reopening upon good cause shown outside the presence of the jury.

8. **Any reference to the fact that (1) ST filed a motion to dismiss and motion to transfer this case, or that (2) ST filed a declaratory judgment lawsuit in Texas that was transferred back to this Court.**

The court agrees that, generally speaking, issues of law previously decided are *not* relevant at trial, and so evidence that the court ruled on any motion in this case, including ST's motion to dismiss and motion to transfer, will be barred. The court will, however, consider whether ST's press release referencing its Texas declaratory judgment action is sufficiently relevant to ABS's claims of exclusionary conduct to outweigh the likelihood of unfair prejudice. With the exception of this press release, ABS will be otherwise barred from referencing this declaratory judgment action. The motion is GRANTED in part and RESERVED in part.

9. **Any evidence, argument, or testimony by any ABS or Genus witness on any topic whereby ABS and/or Genus asserted privilege and refused to provide testimony during depositions.**

ST argues that ABS should be barred from referencing issues where it claimed attorney-client privilege, on the basis that ABS cannot use privilege as a shield from discovery as well as a sword to assert its claims. ST lists over 30 issues it seeks to exclude on this basis. ABS agrees that if a witness refused to respond to a question on the basis

of privilege, that witness cannot answer questions on that subject matter at trial, but argues that ST's list of issues is overly broad and incorrect. The court agrees.

While as a general proposition ABS cannot submit evidence on which it previously refused to provide any discovery on the basis of privilege, ST's descriptions of the topics it seeks to exclude are generic, and its list provides only a citation to docket numbers, supposing it would seem that the court will accept these deposition citations as a blanket refusal to allow all discovery, without any reference to the context in which witnesses may have asserted the privilege or what other avenues for discovery may have been allowed. The court will deal with these issues in the context of the parties' specific deposition designations. Otherwise, this motion is DENIED absent defendants' proffer of ABS's broad, general refusal to answer any questions on a specific topic.

**10. Any evidence, argument or testimony by any ABS or Genus witness on any topic for which ABS and/or Genus failed to designate a 30(b)(6) witness ((1) ABS's negotiation and entering of the 2006 and 2007 agreements with ST and (2) the factual basis for non-infringement of the patents in suit).**

ST argues that because ABS did not designate a witness to discuss its 2006 and 2007 agreements with ST, as well as the factual basis for asserting non-infringement of the patents-in-suit, ABS should not be permitted to submit fact witnesses on these issues. *See Reilly v. NatWest Mkts. Grp.*, 181 F.3d 253, 268 (2d Cir. 1999) ("When a party fails to comply with Rule 30(b)(6), Rule 37 allows courts to impose various sanctions, including the preclusion of evidence."). In support, ST points out that ABS indicated that there was no 30(b)(6) witness capable of testifying as to the 2006 and 2007

9

agreements, and that there was no 30(b)(6) witness who could address the non-infringement issue because it involved legal conclusions.

ABS opposes the motion, arguing that because ABS objected to these 30(b)(6) questions and ST did not seek to overrule the objections, ST waived the ability to contest ABS's objection.  ABS explains that it objected to the question about the 2006 and 2007 agreements because the individuals involved in negotiating those agreements were no longer ABS or Genus employees.  Thus, while ABS apparently chose not to designate former employees who presumably would have consented to testify on its behalf to answer questions about those negotiations during discovery for reasons unknown, ABS now intends to call those same witnesses to provide background testimony on its behalf about negotiation of the 2006 and 2007 agreements.

As to the non-infringement question, ABS argues that ST has mischaracterized the question, and that ST specifically asked "To the extent ABS or Genus contends that they have not infringed any of the claims in any of the asserted patents in this case [], the basis for such contentions."  ABS states that it objected to this question because it involved legal conclusions and a 30(b)(6) deposition was an inefficient method of discovery.  Further, ABS provided discovery on non-infringement in the form of an interrogatory response, its expert report and a 30(b)(6) witness that testified on the structure and operation of the allegedly infringing technology.

As to 2006 and 2007 negotiations, ABS will not be permitted to offer witness testimony in its case-in-chief about the actual negotiations that took place, having failed

10

to do so during discovery, but it may submit evidence about the terms of the contracts and how the contracts were administered in practice. The court will also consider allowing testimony by a witness in rebuttal if timely disclosed to respond to specific representations about the negotiations should defendants open that door. As to issues of non-infringement, even if ABS's objection was improper, ST never followed up on it, and even if it had, barring evidence on this issue would be inappropriate because ABS provided ST with other forms of discovery related to its evidence and claims of non-infringement. Accordingly, this motion is GRANTED in part and DENIED in part.

**11.    ABS or Genus's "Version 1.5" of its GSS technology.**

Having held that GSS Version 1.5 ("GSSv1.5") is not part of this case because ABS opposed discovery on it, defendants would certainly be prejudiced if ABS mentions or references it, particularly because they have yet to receive sufficient documentation on it *and* ST's expert has not had a chance to opine on it. ST further argues that evidence of GSSv1.5 would only confuse the jury about whether GSS technology infringes ST and XY's patents, given that ABS has suggested the GSSv1.5 is a successful design around their patents.

ABS agrees that neither party should be permitted to offer detailed evidence or argument about GSSv1.5, but nonetheless would like to be able to explain to the jury the existence of GSSv1.5, since the original GSS technology at issue in this case has been replaced by GSSv1.5 and will not be commercialized. In particular, ABS asserts that this evidence is relevant to damages should the original GSS technology be found to infringe.

11

As ST points out, the court held that GSSv1.5 is not a part of this lawsuit *because of* the position ABS seeks to take.  Accordingly, this motion is GRANTED, with the caveat that if the trial proceeds to a damages phase after a finding of infringement, the court will RESERVE on whether ABS may move to introduce very limited evidence regarding the existence of GSSv1.5 technology.

**12.  Disparaging remarks or references to the patent system, the United States Patent and Trademark Office, or patents generally.**

ST seeks to exclude disparaging remarks about the patent system because it anticipates that ABS will seek to submit evidence that the patents-in-suit (the '425 patent and the '920 patent) were inadequately reviewed because the examiners are overwhelmed, incompetent and unable to give patent applications the attention they deserve.  In response, ST contends that such arguments undermine the presumption that patent examiners have done their job.  *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1574 (Fed. Cir. 1992).  ST also points out that courts routinely grant similar motions in limine, citing in particular to one case from this district court.  *See Ultratec, Inc. v. Sorenson Communs., Inc.*, 2014 WL 4829173, at *4 (W.D. Wis. Sept. 29, 2014) ("The parties agree that generalized, negative remarks about the patent office would be inappropriate, as well as irrelevant.").

ABS opposes this motion as overly vague, and seeks to submit evidence that establishes mistakes made by the USPTO when it issued two of the patents-in-suit.  In particular, ABS seeks to submit evidence that:  (1) the examiners who decided to issue

12

those patents should not have done so and (2) that the Patent Office does not always have access to or awareness of all the relevant prior art, evidence and information.

Most of these concerns are addressed up front in the patent trial video, but since the parties agree that generalized negative statements about the USPTO, the patent system and patent examiners are inappropriate, and that such evidence is barred, the motion is GRANTED.  The court will, however, permit ABS to submit *specific* evidence of information not before the patent examiners with respect to the two, remaining patents-in-issue here, as well as why those examiners should not have issued those to patents.

**13.    Any references to changes in the parties' infringement or invalidity contentions; for example, patent claims, accused elements, or prior art that are no longer asserted.**

ST's position is that any changes it has made in this lawsuit regarding the number of infringement claims it is asserting is not relevant.  Similarly, ST also agrees not to reference any changes ABS has made to its invalidity contentions.

ABS objects, contending that XY's intervention to assert infringement of the '425 and '920 patents supports its claim that ST's 2007 acquisition of XY was anticompetitive.  For reasons previously explained, the court will allow only a brief description of earlier or present patents.  Accordingly, this motion is GRANTED in part and DENIED in part.

13

> **14.**   **Any newspaper, magazine or internet articles discussing or referencing this litigation or any alleged monopolistic or anticompetitive conduct by ST or XY.**

This kind of double hearsay evidence would normally be inadmissible, and even if admissible, its probative value would be easily outweighed by its prejudicial value. ABS nevertheless opposes the motion, arguing that if ST witnesses granted interviews to the press and are quoted in newspaper, magazine or internet articles, any statements attributable to a witness could be used for impeachment purposes. This argument carries no weight unless the witness were a party opponent *and* a foundation was laid as to their having been given to the news organization.

Here, ABS will have to establish the specific admissibility under the rules of evidence at trial, and so the court RESERVES ruling on this issue.

**B.**   **Motion to exclude witnesses and documents disclosed after close of discovery (dkt. #444).**

ABS recently disclosed Dr. Kathleen Schell as a witness who purchased a flow cytometry system called the FACSDiVA more than a year after the earliest priority date of ST's '092 patent, which ABS contends is relevant to its invalidity claim.

ST asserts that, relevant or not, ABS did not disclose third party witness, Dr. Schell, until May 13, 2015, the last day of discovery,[1] and that it waited to send source documents produced by Dr. Schell until twelve days after the close of discovery. ST

---

[1]  Certain elements of discovery remained open until May 20, 2016, for the limited purpose of obtaining depositions of two witnesses that would not be available before the close of discovery. (Dkt. #406.)

argues that this delay was severely prejudicial because:  (1) while ABS indicated that it would not oppose Dr. Schell's deposition, ST would not be able to seek additional discovery based on anything ST learned from her deposition; (2) Dr. Schell's testimony may require both parties to supplement their expert reports and reopen the expert opinions; (3) any new discovery at this stage would require ST to take time away from trial preparation; and (4) ABS's delay was avoidable and it has not provided a reason for its delay.

As ST points out, the court has had to address numerous delays in this lawsuit, and previously permitted ABS to supplement its invalidity contentions.  Further, ST was not given adequate, timely notice that Dr. Schell may be called as a witness.  Although ABS points out that Dr. Schell's name "appears" in its March 7 disclosures, albeit in Dr. Robinson's report and one document produced by ABS, those two instances indicating her purchase of the FACSDiVa System is insufficient to establish that ST was on notice that she would be called as a witness.  Indeed, during his deposition, Dr. Robinson indicated that he did not speak to Dr. Schell about her purchase, so it was not apparent to ST that Dr. Schell had relevant information.  Moreover, the document that includes Dr. Schell's name was produced *after* Dr. Robinson's report and only a week prior to the close of discovery.

Although ABS points to a few other instances in which Dr. Schell's name appeared somewhere in the available production toward the end of the discovery period, these instances indicate only that ABS should have disclosed her as a possible witness at the

15

beginning of March, or shortly thereafter at the latest.  While ABS does not oppose Dr. Schell's last-minute deposition, that is the very least it can do.  More to the point, ABS has no response to ST's argument that her testimony, if admitted, may require revisions to the expert reports and additional deposition testimony.  Because it is simply too late for the court to reopen discovery on this issue, ST's motion is GRANTED.

## C.      Objection to ABS's § 282 Notice (dkt. #509).

ST wants ABS to trim its 61 prior art references identified in its § 282 Notice of Identification of Prior Art, but especially the 24 additional references it did not previously disclose, as well as any new references included in its "catch-all" disclosure. ST argues that most of the references had not been treated as a basis for invalidity in plaintiffs' expert reports, nor were they addressed or adequately disclosed in their invalidity contentions.  To the extent not in their report, the experts will obviously not be allowed to opine on prior art.  Similarly, to the extent not timely disclosed under Rule 26 or by timely supplement, including in response to contention interrogatories, the prior art will also be excluded.

Rather than attempt to parse each of these pieces of prior art under this direction, the court directs the parties to meet and confer on prior art and claims issues in light of the court's summary judgment opinion, and directions in this and other rulings on motions *in limine*.  To the extent the parties are unable to agree, for each prior art reference that remains in dispute, ABS shall file a list of specific disclosure dates in its experts report, Rule 26 disclosures, responses to contention interrogatories or otherwise,

no later than Wednesday, July 27, and defendants should be prepared to respond during Thursday's telephonic conference, July 28.  The court will RESERVE ruling on this motion until then.

### D.    Voir Dire

The parties jointly prepared a juror questionnaire that they believe will speed up the process.  (Dkt. #519.)  They claim that a normal, live voir dire process would be too time-consuming and some jurors may feel uncomfortable answering some of the questions verbally.  The court sees no particular need to use a questionnaire here, and so that motion is DENIED.  The court will circulate its proposed voir dire to the parties prior to the final pretrial conference.

### E.    Deposition Designations

The court expects the parties' to revise their deposition designations in light of the court's summary judgment opinion and motions *in limine* rulings.  Parties should only submit designations for those witnesses who will not be testifying live and are otherwise permissible under Fed. R. Civ. P. 32(a)(4).

The deposition designation submission should include the following columns:

- Designations
- Objections
- Counter-Designations
- Objections
- Counter Counter-Designations

17

- Rulings

By July 26, 2016, the party proposing the testimony should file amended designations which reflect pertinent rulings on summary judgment and motions in limine. By July 28, 2016, the opposing party should file amended objections and counter-designations also reflecting the court's rulings.  By July 29, 2016, any objections to those counter-designations and any limited counter counter-designations are due.

Also by July 29, 2016, the party originally proposing the designations should email to the court (wiwd_wmc@wiwd.uscourts.gov) transcripts highlighting all proposed designations to which the opposing party has objected in one color, all proposed counter-designations to which it objects in a second color, and all counter counter-designations in a third color.  Also by July 29, 2016, the party proposing the designations should email to the court the final filing (the one containing any objections to counter-designations) in Word format.  Finally, also by July 29, 2016, the party proposing the designations should email to the court the list in which they intend to call witnesses by deposition and the approximate date of their planned testimony.

## F.    Exhibits

Like the deposition designations, the court expects the parties to reduce their respective exhibit lists and objections in light of the court's summary judgment opinion and motions in limine rulings.  Accordingly, by July 26, 2016, the party proposing the exhibits should file an amended list that takes into account the pertinent rulings on summary judgment and motions in limine.  By July 27, 2016, the opposing party should

18

file amended objections, also reflecting the court's rulings.   The court will take up remaining objections during Thursday telephonic conference.


ORDER

IT IS ORDERED THAT:

1.   Defendants' Motions in Limine (dkt. #488) are GRANTED in part, DENIED in part and RESERVED in part as reflected above.

2.   Defendants' Motion to Exclude Witness and Documents Disclosed After Close of Discovery (dkt. #444) is GRANTED.

3.   The court RESERVES on defendants' objection to ABS's § 282 Notice (dkt. ## 503, 509).

4.   The Joint Motion for Use of Juror Questionnaire (dkt. #519) is DENIED.

Dated this 25th day of July, 2016.

BY THE COURT:


/s/
_____
William M. Conley
District Judge

19