IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ABS GLOBAL, INC.,

        Plaintiff/Counterclaim Defendant,           OPINION AND ORDER

    v.

                                          14-cv-503-wmc

INGURAN, LLC,

        Defendant/Counterclaimant/Third-Party Plaintiff,

    and

XY, LLC,

        Intervening Defendant/Counterclaimant/Third-Party Plaintiff,

    v.

GENUS PLC,

        Third-Party Defendant.

---

After a ten-day trial, a jury found that defendant Inguran, LLC, d/b/a Sexing Technologies ("ST"), is a monopolist in the market for sexed semen processing services in the United States, and it used its position to insist on anticompetitive terms in its 2012 contract with plaintiff ABS Global, Inc. ("ABS") in violation of Section 2 of the Sherman Act. At the same time, the jury found that ABS infringed ST's patents and breached one of the terms of the contract with ST.[1] In this opinion, the court addresses (1) ST's motion to seal portions of the trial transcripts (dkt. #744) and (2) ABS's motion for reconsideration of the court's earlier order sealing certain trial exhibits (dkt. #764).

---

[1] Background information about this case can be found in the court's earlier opinions on the parties' summary judgment (dkt. #572) and post-trial motions (dkt. #772).

Federal Rule of Civil Procedure 26(c)(1)(G) provides that upon a showing of "good cause," the court may enter an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." The Seventh Circuit has made clear that sealing certain information may be warranted "in order to protect trade secrets or other compelling interests in secrecy."[2] *Jessup v. Luther*, 277 F.3d 926, 929 (7th Cir. 2002). That said, there is a "long-recognized presumption in favor of public access to judicial records," which is "of a constitutional magnitude." *In the Matter of Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984). Consistent with that principle, "those documents, usually a small subset of all discovery, that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002).

## I.    Trial Exhibits

Addressing ABS's motion first, the court granted ST's motion to seal twenty trial exhibits containing confidential information in two categories: (1) agreements between ST and third parties; and (2) ST's sensitive, non-public business information. (Dkt. #762.) ABS argues primarily that ST has failed to make the showing required by the Seventh Circuit with respect to both categories of information, particularly given their

---

[2] As with other issues not exclusive to patent law, the Federal Circuit applies regional circuit law regarding confidentiality. *See, e.g., In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 497 F. App'x 66, 67 (Fed. Cir. Feb. 1, 2013) ("Because the protection of confidential information is not an issue unique to our jurisdiction, we will apply the law of the regional circuit.").

importance to the jury's and court's antitrust rulings.  In response, ST correctly points out that it ensured the monitor displayed to the public was turned off when witnesses discussed exhibits containing its trade secrets, and the court has already granted the parties' joint motion to seal certain exhibits that detailed their confidential, technical trade secret information, including diagrams, manuals and emails.  (Dkt. #761.)

In contrast to the other, sealed exhibits containing ST's trade secrets, however, the court agrees with ABS that at least certain provisions in the semen sorting and licensing agreements at issue with respect to its motion for reconsideration *were* critical to the resolution of the parties' monopolization claim, including important factual issues such as ST's intent, the definition of the relevant market, whether ST had monopoly power and, of course, challenges to the anticompetitive nature of certain of their terms. Moreover, as ABS points out by way of example, a witness discussed the pricing and volume terms in the contract between ST and Select Sires, exhibit 86, in open court.

Still, not all provisions were disclosed, nor were they particularly material to the issues decided by the jury.  Moreover, the confidentiality of those agreements generally is not in dispute.  Finally, the confidential nature of these terms is not just important to the litigants, but also to third-party bull studs who have not been heard on this issue.

Given these competing interests, the court strikes the following balance: (1) these exhibits will remain sealed -- 83, 86, 89, 104, 146, 147, 430 and 1482 (third-party semen sorting agreements), 95 and 107 (third-party licensing agreements), 455 and 1591 (summaries of those licensing agreements), 1490 (summarizing ST's revenue, amount spent on research and development, net income to shareholders and profitability over

time), and 91, 112 and 1681 (third-party purchase agreements and a third-party price quote); and (2) these exhibits will not be sealed -- 92 (the 2004 lead licensing agreement between ST and XY), 100 and 1619 (2002 licensing agreements between ST and XY), and 450 and 1501 (summaries of ST's contracts with third-party bull studs of terms of agreements most pertinent to the parties' monopolization claim).

Similarly, exhibit 1584, a summary exhibit presenting a breakdown of ST's profit and loss statements between 2004 and 2015, will not be sealed because it includes information critical to ABS's monopolization claims.  For the same reason, the remaining summary exhibits fall into the category of general ST financial information central to the monopolization claims at issue in this case, for which ST has not shown good cause to seal: exhibit 447 (a document summarizing ST's variable margin for sexed semen sorting services over time), and exhibit 1491 (a summary of "ST's Sales as a percentage of U.S. Dairy Semen Unit Sales in the United States").

In contrast, ST has shown good cause to seal the following exhibits: 77 and 102 (a lender presentation and memorandum prepared by an investment banking firm, respectively) and 142 (a document presenting minutes from a board meeting of Cytonome, a third party to this litigation), all of which contain confidential information about ST's business strategy.  *See Metavante Corp. v. Emigrant Sav. Bank*, No. 05-CV-1221, 2008 WL 4722336, at *10 (E.D. Wis. Oct. 24, 2008) (sealing exhibits containing "business plans and strategies").

As to the final exhibit 97, a list of ST's shareholders and their ownership stake, ST argues that it should be sealed because the shareholders are third parties to this litigation

and are private individuals or entities who are generally not required to disclose that information publicly.  The court agrees with ABS, however, that ST has failed to show good cause why this exhibit should be sealed in its entirety, having failed to cite any case law establishing that maintaining the confidentiality of the identity of shareholders of a private company is a sufficient interest to require an admitted exhibit containing their names to be sealed.  At the same time, the relative holdings of each shareholder are of no obvious public interest, and may be more sensitive.  Accordingly, ABS's motion for reconsideration of the court's order granting ST's motion to seal trial exhibit 97 will be granted in part, with the original exhibit to remain under seal, and ST to file a redacted version publicly that includes the shareholders' names but not their ownership shares.

## II.    Trial Transcripts

ST also moves to seal portions of the trial transcripts disclosing ST's: (1) trade secrets, including its confidential information regarding treating and sorting sexed semen; (2) financial information; and (3) third-party agreements, including licensing terms.  As it did with respect to ST's motion to seal trial exhibits, ABS opposes ST's motion on the basis that it is overbroad, identifying one example of a statement that has already been used in XY's own press release, and arguing that ST's protocol regarding a pH level for the sorting process that its expert "learned in school" is not a trade secret.  (Pl.'s Opp'n Br. (dkt. #745) at 4.)  In reply, ST withdraws its request to seal the description of XY in its press release, as well as other portions of the transcript "out of an abundance of caution."  (Def.'s Reply Br. (dkt. #750) at 1.)

Consistent with the court's rulings above, ST's motion to seal certain portions of

the trial transcript will be granted, but only in part.  ST has sufficiently established good cause to maintain the confidentiality of its technical trade secret information, including the pH levels it uses, and so those portions of the transcript, reflected in Section I of ST's chart of redactions (dkt. #750-1, pp. 1-4), will be sealed.

For the most part, however, the additional portions of the transcripts that ST moves to seal all concern contract and patent practices that bear directly on the resolution of the monopolization and patent claims.  Furthermore, many of the facts in those portions of the transcripts are also disclosed in the summary exhibits and licensing agreements that will not be sealed.  Therefore, the remainder of ST's motion will be denied, with the exception of the portions of the transcript it moves to seal regarding: (1) income received by shareholders -- day two p.m. (dkt. #715) at 6:21 and day five a.m. (dkt. #714) at 119:6 and 119:12 -- and (2) confidential third-party licensing terms -- day ten a.m. (dkt. ##723, 726) at 36:20-24, 37:2-4, 51:1-3, 51:24, 52:5, 52:8, 76:22-25, and 77:1-2.

ORDER

IT IS ORDERED that:

1) Plaintiff ABS Global, Inc.'s motion for reconsideration (dkt. #764) is GRANTED IN PART and DENIED IN PART consistent with this opinion.

2) Defendant ST's motion to seal portions of the trial transcripts (dkt. #744) is GRANTED IN PART and DENIED IN PART consistent with this opinion.

3) The clerk's office is directed to maintain the following transcripts under seal: dkt. ##714, 715, 717, 718, 719, 723, and 726. All other trial transcripts may be unsealed.

4) The clerk's office is further directed to unseal ST's redacted versions of the transcripts at dkt. ##750-7, 750-9, and 750-10.

5) By April 19, 2017, ST shall file redacted versions of exhibit 97 and the trial transcripts at dkt. ##714, 715, 723, and 726 consistent with the court's rulings.

Entered this 5th day of April, 2017.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge