IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ABS GLOBAL, INC.,

    Plaintiff/Counterclaim Defendant,

v.

INGURAN, LLC d/b/a SEXING TECHNOLOGIES,

    Defendant/Counterclaim Plaintiff,

and

XY, LLC,

    Intervenor-Defendant/Counterclaim Plaintiff,

v.

GENUS PLC,

    Counterclaim Defendant.

OPINION AND ORDER

14-cv-503-wmc

---

INGURAN, LLC, CYTONOME/ST, LLC,
and XY, LLC,

    Plaintiffs/Counter Defendants,

v.

ABS GLOBAL, INC., GENUS PLC
and PREMIUM GENETICS (UK) LTD.,

    Defendants/Counter Claimants.

OPINION AND ORDER

17-cv-446-wmc

---

At the final pretrial conference, the court directed the parties to submit supplemental briefing with respect to a number of motions *in limine* on which the court previously reserved, along with other topics. This opinion and order addresses this additional briefing, as well as other recent motions filed by the parties.

OPINION

I.  Reserved MILs / Other Areas of Discussion Prompted by MIL Opinion

   A. ABS's Motion to Strike ST's Damages Expert Malackowski's Testimony ('503 dkt. #934; '446 dkt. #329).

In the court's motions *in limine* opinion, the court reserved on whether to exclude Malackowski's testimony based on an allocation of 50% of the value of ABS's SEXCEL product to the patented invention on the basis that it was unreliable. (8/14/19 Op. & Order ('503 dkt. #1008; '446 dkt. #403) 15-16.) During the FPTC, ST indicated that its expert Vacca provided the necessary support for the 50% allocation. In turn, the court directed ST to submit a proffer explaining Vacca's basis for this percentage, which it did ('503 dkt. #1014; '446 dkt. #409), and ABS has also filed a responded ('503 dkt. #1021; '446 dkt. #416).[1]

The problem with Malackowski's reliance on Vacca does not arise out of what Vacca opines, but rather on what he does not opine, indeed is unqualified to opine. As a technical expert, Vacca appropriately describes the "very difficult task" of "distinguishing between sperm cells on the basis of their chromosome content with a high degree of confidence and at a suitable rate," and lauds the "enhanced precision provided by the Cytonome patents" to do both "using relatively less expensive manufacturing methods and with less complexity due to the use of channel geometry, as opposed to actively monitoring and controlling inputs to the system," while at the same time being "generally exerting less stress on the

---

[1] The parties also submitted jury instruction submissions to address the relevance of actual cost data, which related to a different part of ABS's *Daubert* motion challenging Malackowski's testimony. The court will consider these submissions in crafting the damages instructions.

cells." (Vacca Rept. ('746 dkt. #259) ¶¶ 32, 38.)  While this neatly summarizes the advantages of the Cytonome patented technology, what is missing is in Vacca's analysis is *any* explanation as to the relative value of this improvement over past technology, whether in terms of percentage improvement in cell selection by sex, speed or robustness of the sperm cells, much less what that percent improvement might mean commercially, whether by increase in demand, price or reduction in costs.  Without this information, Malackowski would seem to be allocating 50% of the value of ABS's SEXCEL product to the patented invention out of whole cloth.  Indeed, as ST concedes, Vacca's only opinion allocating the relative contribution of this new technology to the overall product is that the "three dimensional focusing claimed in the Cytonome patents" is "responsible for a majority of the GSS system's technical value." (*Id.* at ¶ 32.)  Whatever this may or may not mean from a technical perspective (for example, degree of difficulty, elegance of solution, purity of product), Malackowski could only be guessing as to how that might translate as to the relative *market* value, since Vacca does not even purport to have that kind of expertise.[2]

Accordingly, Malackowski will be precluded from offering any royalty opinion based on his reliance on Vacca's vague allocation from a technical standpoint.  The reserved portion of this motion is, therefore, GRANTED.

**B. ABS's Other MILs No. 5: Bar evidence or argument relating to Cytonome research and development activities involving the use of microfluidics in sperm sorting ('503 dkt. #944; '446 dkt. #339).**

---

[2] ABS is also right to criticize Malackowski's reliance on Vacca's opinion for his attribution of 50% valuation to the patented technology, since Vacca does not even differentiate between the value attributable to other, known methods of 3D focusing, much less address the value of the "[p]umps, lasers, detectors, and electronics" that comprise the bulk of the infringing products. (ABS's Resp. ('503 dkt. #1021; '446 dkt. #416) 3-7.)

In the MIL opinion, the court also reserved on whether reference to some narrower area of R&D (e.g., Viper SS project) should be excluded. (8/14/19 Op. & Order ('503 dkt. #1008; '446 dkt. #403) 29-30.) Specifically, during the FPTC, the court directed ABS to submit clarification as to the intended scope of its motion, which it has now done. ('503 dkt. #1013; '446 dkt. #408.) ABS seeks to limit Sharpe to his deposition testimony on the Viper SS machine, and more specifically seeks to bar him from testifying that the Viper SS falls within the scope of the Cytonome patents. In response, ST reiterates that Sharpe's trial testimony will be limited strictly to that offered during his deposition -- namely, that Cytonome is investigating the use of the Cytonome patented technology in the Viper SS machines. ('503 dkt. #1023; '476 dkt. #418.) On this much, the parties appear to be in agreement. However, in response, ST points out that ABS also seeks to prohibit Sharpe from testifying as to whether "any other Cytonome patent[] falls within the scope of any claim in the asserted Cytonome patents." (*Id.* at 2.) As ST points out, the court previously rejected ABS's request to strike Sharpe's testimony that the GigaSort technology practices the Cytonome patents. As such, this motion is DENIED. Sharpe is free to testify about both the Viper SS and GigaSort products provided he does so in a manner consistent with his deposition testimony.

**C. ABS's Other MILs No. 7: Bar testimony regarding reasonable royalty figures not disclosed in expert report or by witnesses who have not served expert reports ('503 dkt. #944; '446 dkt. #339).**

In its MIL order, the court denied ABS's motion to bar testimony regarding reasonably royalty figures not disclosed in an expert report or by witnesses who have not served expert reports. During the FPTC, ABS sought clarification. In response, the court

4

invited ABS to submit a proffer directing the court to caselaw limiting a patent plaintiff to damages disclosed in an expert report and/or foreclosing fact testimony or attorney argument as to a higher amount that disclosed by its damages expert. In its submission, ABS expressly seeks to exclude ST's CEO Juan Moreno's testimony regarding a total damages award, offering three bases: (1) Moreno's testimony about a hypothetical negotiation would not be based on personal knowledge and is, therefore, inadmissible; (2) Moreno's testimony would be contrary to his deposition testimony in which he disavowed any knowledge of what the Cytonome patents are worth; and (3) Moreno would likely "speculate widely" about the value of these patents given his deposition testimony about the value of an XY patent. ('503 dkt. #1012; '446 dkt. #407.) As specifically requested by the court, ABS also points to some district court cases in support of its first basis, excluding fact witness testimony about what would happen in the hypothetical negotiation unless based on personal knowledge. *See AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139, 146 (D. Del. 2013); *Info-Hold, Inc. v. Muzak, LLC*, No. 11-cv-283, 2013 WL 4482442, at *5 (S.D. Ohio Aug. 20, 2013), *reversed in part on other grounds by* 783 F.3d 1365 (Fed. Cir. 2015); *NetAirus Techs., LLC v. Apple Inc.*, No. 10-cv-03257, slip op. at *7-8 (C.D. Cal. Nov. 8, 2013).[3]

ST responded with its own cases, in which courts have allowed testimony by owners

---

[3] ST attempts to distinguish ABS's cases on the basis that the testimony at issue was not of an owner or an officer, but rather of an inventor. Not true, at least not for all of the cases. In *AVM Techs.*, while the challenged testimony was of an inventor, he was also the CEO of plaintiff's predecessor, which appeared to be the relevant entity involved in that hypothetical negotiation. *See* 927 F. Supp. 2d at 145. The lay witnesses at issue in *Info-Hold* were not identified, and, therefore, there is no basis to distinguish the case based on the witnesses not being owners or officers of the plaintiff. 2103 WL 4482442, at *5 (identifying three fact witnesses by name but not by title).

or corporate executives regarding their state of mind during a hypothetical negotiation and what a reasonable royalty rate would have been. ('503 dkt. #1024; '446 dkt. #419.) *See Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, Civil Action No. 09-290, 2013 WL 176970, at *2 (W.D. Pa. Apr. 24, 2013); *Seitz v. Envirotech Sys. Worldwide Inc.*, No. CIV. A. H-02-4782, 2008 WL 656513, at *5 (S.D. Tex. Mar. 6, 2008).

In light of this apparent split in the caselaw, and without the benefit of Federal Circuit guidance on this question, the admissibility of Moreno's testimony about what he would have sought as a reasonable royalty during the hypothetical negotiation appears to be a close call.[4] Fortunately, the court need not reach this issue because Moreno expressly disavowed having an opinion at his deposition as to the value of the Cytonome patents. (Moreno Dep. ('746 dkt. #148) 204 ("Q. So you have no opinion, no view, as to what the Cytonome patents are worth in isolation? A. An expert will do that. Q. Okay. You have no opinion on that. A. Not at this point in time.").)

ST now claims to have closed this gap in a supplemental response, served on May 20, 2019, to an interrogatory seeking information about damages. However, the court credits ABS's argument that it would be unfairly prejudiced by this late response. *See AVM, Techs.*, 927 F. Supp. 2d. at 147 (excluding fact testimony because witness testified at his deposition that he "had 'no idea[]' what he would have accepted for a license," denying defendant of "any opportunity to seek discovery into Tran's damages theory or develop its

---

[4] In *ABS I,* Moreno provided testimony as to the total licensing fee he would have sought during the hypothetical negotiation. This testimony, however, came in without an objection by ABS. In other words, the fact that Moreno offered similar testimony as that challenged by ABS now does not necessarily mean that he should be permitted to offer similar testimony at this trial.

6

own response and, therefore, would be prejudiced by Tran's proposed expert and hypothetical testimony"). Regardless, even in its supplemental response, ST disclosed no more than that it would be relying on Moreno's deposition testimony, during which Moreno refused to testify about the value of the Cytonome patents.[5] (O'Brien Decl., Ex. 9 ('746 dkt. #342) 37.) As such, the court agrees with ABS that Moreno may not testify as to a total damages amount or what a reasonable royalty was at the time of a hypothetical negotiation. The court, therefore, amends its ruling on ABS's motion in limine no. 7 to GRANT IT IN PART AND DENY IT IN PART. Of course, ST may still elicit other fact testimony from Moreno to the extent relevant to the *Georgia Pacific* factors.

**D. ABS's Other MILs No. 9: Bar ST's expert Malackowski from presenting evidence relevant only to damages of the XY patents ('503 dkt. #944; '446 dkt. #339).**

The court reserved on admissibility of any evidence or topics that may touch on the XY patents that ST contends remain relevant to the *Georgia-Pacific* framework for the Cytonome patents still in play. (8/14/19 Op. & Order ('503 dkt. #1008; '446 dkt. #403) 35-36.) At the FPTC, the court invited ST to submit a proffer directing the court to whether Malackowski actually disclosed reliance on the XY patents in forming his opinion on a reasonable royalty for the Cytonome patents. In the order issued after the FPTC, the

---

[5] ST also argues that Moreno was not asked what a reasonable licensing fee would be; rather, he simply testified that he did not know what the patents were worth. Of course, in the context of a reasonable royalty damages claim, the value of the patents *is* the licensing fee, and the only real, personal input Moreno would have at the time of *the hypothetical negotiation* is how he then valued the patents as a one-time royalty payment or ongoing royalty on ABS's product sales, not how he would value them now. Having no idea at his deposition, he presumably would have had no idea at the time of a hypothetical negotiation in the past (or at least is precluded from volunteering it at this late date).

7

court stated that if ST failed to submit such a proffer, Malackowski "may not refer to the XY patents in his testimony to the jury in this case." (8/16/19 Order ('503 dkt. #1011; '476 dkt. #406) ¶ 11.) ST did not file a proffer, and this motion is now GRANTED.

**E. ST's Other MILs No. 5: Bar evidence, testimony or argument that suggests ST is generally litigious ('503 dkt. #946; '446 dkt. #341).**

During the FPTC, the court granted as unopposed the reserved portions of this motion. In granting it, however, the court invited a joint submission of stipulated facts (or failing that, each parties' competing proposed facts) from the *ABS I* trial. Unsurprisingly, the parties submitted their own statements. The parties agree that the jury should be informed of the following fact during the damages phase: "It has already been determined in an earlier proceeding that ST is entitled to an up-front payment of $750,000, plus $1.25 per unit, as a reasonable royalty for ABS's infringement of the '987 patent." (ST's Not. ('503 dkt. #1028; '446 dkt. #423; ABS's Not. ('503 dkt. #1029; '446 dkt. #424).)

However, ABS proposes another fact for the liability phase: "It has already been determined that the claimed inventions of the '987 patent would not have been obvious to a person of ordinary skill in the art at the time of the invention." (ABS's Not. ('503 dkt. #1029; '446 dkt. #424).) In proposing it, ST does not join in this request, and ABS represents that ST actually objects to the introduction of this fact. ABS argues that "[t]he fact that it would not have been obvious to sort sperm cells with a laser-kill method tends to suggest that the '987 patent specification would need to provide substantive guidance as to how to practice such a method." (*Id.* at 3.) ABS also argues that this fact would counter the testimony ST seeks to offer from ABS's expert Robinson's report that it would

be obvious to sort sperm sells with a laser-kill method to support a finding that the patent is enabled. Since the scope of Robinson's designated deposition testimony is the subject of recent briefing and further designations by the parties, the court will RESERVE on the parties' submissions.

### F. ST's Other MILs No. 11: Bar evidence, argument or testimony of claims or defenses dismissed before trial ('503 dkt. #946; '446 dkt. #341).

In the MIL opinion, the court reserved as to admissibility, in the willfulness phase of trial, of ABS's evidence that ST dismissed infringement claims and argument that these dismissals demonstrate the reasonableness of ABS's actions to ensure that it was not infringing the Cytonome patents. (8/14/19 Op. & Order ('503 dkt. #1008; '446 dkt. #403) 61-62.) At the FPTC, the court invited ST to submit a proffer directing the court to case law concerning the admissibility of the disposition of other patent infringement claims and IPR proceedings on willfulness determination, which it did. ('503 dkt. #1020; '476 dkt. #415.) ABS has also filed a response.

In its response, ABS agrees to not introduce evidence of the court's dismissal of the infringement claims of the two other Cytonome patents, and argues that this withdrawal moots any interest on the part of ST to introduce results of the IPR proceedings. ('503 dkt. #1035; '476 dkt. #430.) The court agrees. As such, the reserved portion of this motion is GRANTED AS UNOPPOSED.

## II. ST's Motion for Leave to Serve Supplemental Rebuttal Expert Report of Vacca ('503 dkt. #1016; '446 dkt. #411)

In the MIL opinion, the court granted in part ABS's request to supplement its expert Di Carlo's report, stating in a footnote that it "would entertain some limited, supplemental

rebuttal as to this opinion, if proposed in writing by the end of this week." (8/14/19 Op. & Order ('503 dkt. #1008; '446 dkt. #403) 5 n.3.) ST took the court up on that offer and submitted a proposed supplemental rebuttal report in which Vacca disputes Di Carlo's opinion that the ramp focuses from the bottom and top, instead opining that it just focuses from the bottom. Since ABS has just filed its response, the court will also RESERVE on this motion until next week.

### III. Motion to Compel Dr. Robinson's Appearance ('503 dkt. #1004; '446 dkt. #399)

Finally, at the FPTC, the court reserved on ST's motion to compel Dr. Robinson (ABS's expert) to testify at trial. As an initial step, ABS was asked to inform the court and plaintiffs by August 19 at to whether Robinson is available for a trial deposition. Instead, ABS advised that it "does not intend to . . . present him for a third deposition in this case, although ABS will not object to ST designating otherwise-admissible testimony from his two prior depositions." (ABS's Br. ('503 dkt. #1019; '476 dkt. #414) 2.) ABS also indicates that Robinson is traveling in Africa at least through the end of this month. The bulk of its submission, however, is spent on why the court should not allow ST to read into the record portions of Robinson's report as part of the deposition designations.

While the court will deny ST's motion to compel Robinson's appearance at trial for lack of subpoena power, ABS's repeated failure to take steps to make him available at trial or at least by deposition will be a factor in deciding what other reliable statements will be admitted from his report as part of ruling on deposition designations. As such, this motion is DENIED IN PART AND RESERVED IN PART.

ORDER

IT IS ORDERED that:

1) The reserved portion of defendants and counter claimants ABS Global, Inc. Genus, PLC, and Premium Genetics (UK) Ltd.'s motion to strike ST's damages expert Malackowski's testimony ('503 dkt. #934; '446 dkt. #329) is GRANTED.

2) Defendants' Other MILs No. 5 ('503 dkt. #944; '446 dkt. #339) is DENIED.

3) The prior ruling on defendants' Other MILs No. 7 ('503 dkt. #944; '446 dkt. #339) is amended. That motion is now GRANTED IN PART AND DENIED IN PART, consistent with the above opinion.

4) Defendants' Other MILs No. 9: Bar ST's expert Malackowski from presenting evidence relevant only to damages of the XY patents ('503 dkt. #944; '446 dkt. #339) is GRANTED.

5) The reserved portion of plaintiffs and counter defendants Inguran, LLC, Cytonome/ST, LLC and XY, LLC's Other MILs No. 11 ('503 dkt. #946; '446 dkt. #341) is GRANTED AS UNOPPOSED.

6) Plaintiffs' motion to compel appearance of Robinson ('503 dkt. #1004; '446 dkt. #399) is DENIED IN PART AND RESERVED IN PART.

Entered this 23rd day of August, 2019.

BY THE COURT:


/s/
_____
WILLIAM M. CONLEY
District Judge