IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ABS GLOBAL, INC.,

    Plaintiff/Counterclaim Defendant,

v.

INGURAN, LLC d/b/a SEXING TECHNOLOGIES,

    Defendant/Counterclaim Plaintiff,

and

XY, LLC,

    Intervenor-Defendant/Counterclaim Plaintiff,

v.

GENUS PLC,

    Counterclaim Defendant.

ORDER

14-cv-503-wmc

---

INGURAN, LLC, CYTONOME/ST, LLC,
and XY, LLC,

    Plaintiffs/Counter Defendants,

v.

ABS GLOBAL, INC., GENUS PLC
and PREMIUM GENETICS (UK) LTD.,

    Defendants/Counter Claimants.

ORDER

17-cv-446-wmc

---

Based on divergent testimony during the liability phase of trial as to the plain meaning of the term "enriched" as used in the last step of "photo-damaging the selected sperm cells to product an *enriched* population of sperm with respect to either characteristic A or characteristic B" in claim 1 of the '987 patent, the court invited the parties to submit a proposed instruction on its meaning. ('503 dkt. #257-8.) In response, ABS filed a

proposed construction of this term to require "a viable enriched sperm sample of at least 85% purity." (ABS's Br. ('503 dkt. #1098) 2.) For the reasons explained on the record and set out formally in this opinion, the court rejects ABS's request.

As explained in an earlier order, ABS attempted to read in a claim requirement on remand of a "photo-damage sorter that produces sexed semen at commercially usable speeds, purities, and viability levels," based solely on comments by the Seventh Circuit in its discussion of obviousness. In rejecting that argument, the court explained that the Seventh Circuit not only failed to adopt that construction, but the Federal Circuit has consistently rejected requiring a commercially viable embodiment in determining whether a patent is enabled *unless* the claim itself contained such a requirement. (9/3/19 Order ('503 dkt. #1085) 2 (citing *CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333, 1338 (Fed. Cir. 2003), among other cases).) As the Federal Circuit observed in *CFMT*, where a patent simply claims improvement, without reference to a specific amount or degree of removal of contaminants, "the disclosure enables that invention by showing improvements in the overall system." 349 F.3d at 1338. Likewise, in *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296 (Fed. Cir. 2010), the Federal Circuit observed, "[i]t is not required to enable the most optimized configuration, unless this is an explicit part of the claims." *Id.* at 1306–07. In contrast, where the patent claims a specific, measured result, the specification must enable up to that amount. *See Emergency Fuel, LLC v. Penzoil-Quaker State Co.*, 71 F. App'x 826, 831 (Fed. Cir. 2003) ("Generally increasing the octane of the emergency fuel, however, is not commensurate with the scope of the claim limitation, which requires raising the octane number above 86.") (citing *Nat'l*

*Recovery Techs., Inc. v. Magnetic Separation Sys.*, 166 F.3d 1190, 1196 (Fed. Cir. 1999) (stating "[t]he scope of the claims must be less than or equal to the scope of the enablement")).

In support of its position, ABS cites to two cases, both of which appear to be distinguishable from the claims at issue in the '987 patent. In *MagSil Corporation v. Hitachi Global Storage Technologies, Inc.*, 687 F.3d 1377 (Fed. Cir. 2012), the Federal Circuit affirmed the district court's finding of nonenablement. Specifically, the court concluded that the specification disclosed a maximum change of resistance of only 10%, and given the district court's construction of the "at least 10%" to mean "resistance changes beyond 10% up to infinity," the specification did not teach one skilled in the art to practice the full scope of this claim requirement. *Id.* at 1381-84. Here, the parties did *not* request, and the court did not construe, the "enriched" requirement in claim 1 of the '987 patent to cover a specific range of purity, either in the first trial *or* after remand by the Seventh Circuit. Even assuming the holding in *MagSil* is not an outlier, it is distinguishable based on the broad construction of the term, covering increases in resistance changes literally "to infinity." *See Advanced Fiber Techs. (AFT) Tr. v. J & L Fiber Servs., Inc.*, No. 1:07-CV-1191 LEK/DEP, 2015 WL 1472015, at *17 (N.D.N.Y. Mar. 31, 2015) (distinguishing *MagSil* on the same basis). The court concludes that this case is more similar to the claim at issue in *CFMT*, which simply disclosed a method for cleaning semiconductor wafers, without disclosing a specific degree or amount of removal of contaminants. 349 F.3d at 1335.

The *MagSil* court also cited to a 1970 opinion, *In re Fisher*, 427 F.2d 833 (C.C.P.A. 1970), from the Court of Customs and Patent Appeals, the predecessor of the Federal

Circuit, that ABS also cites in its brief in support of this construction. In *Fisher*, the court affirmed the denial of a patent for insufficient disclosure by the Board of Appeals of the United States Patent Office. Specifically, the court reasoned that the open-ended requirement that the claimed product -- a hormone suitable for humans -- "exhibits . . . activity equal to at least [one] International Unit of ACTH per milligram" permitted the patent applicant to claim potencies extending well beyond the 2.3 measurement disclosed in the specification. *Id.* at 839. Even then, the court limited its ruling to patents involving "unpredictable factors, such as most chemical reactions and physiological activity," contrasting patents dealing with "mechanical or electrical elements," where "a single embodiment provides broad enablement in the sense that, once imagined, other embodiments can be made without difficulty and their performance characteristics predicted by resort to known scientific laws." *Id.*; *see also Cedarapids, Inc. v. Nordberg, Inc.*, 121 F.3d 727 (Fed. Cir. 1997) (reiterating distinction between patents involving unpredictable and predictable factors).

Here, ABS never developed any argument explaining why the '987 patent involves unpredictable factors. Indeed, in *Fisher*, the court expressly distinguished broad claims -- for example, claims to "substantially pure compositions" -- reasoning that those claims at least have an "upper limit of 100% Purity." *Id*. at 840. Therefore, the CCPA found that those claims do not suffer from the same theoretical possibility of infinite potencies. *Id.*

Even if these cases had some application to the claims of the '987 patent, the court further finds that ABS waived this new claim construction by failing to raise it timely during *ABS I*, upon remand by the Seventh Circuit, or until almost the close of evidence

on liability. To have allowed such a last-minute construction far exceeding the plain meaning of "enriched" as understood by one skilled in the art mid-trial would be inappropriate under any sense of basic fairness at trial, especially following adoption of the Federal Rules of Civil Trial and abandonment of "trial by ambush." *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 253 (1978) (Powell, J., concurring and dissenting) (trial by ambush disserves the cause of truth). Accordingly, the court declined to provide the instruction ABS sought.

Entered this 10th day of September, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge