IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ABS GLOBAL, INC.,

              Plaintiff/Counterclaim Defendant,

     v.

INGURAN, LLC d/b/a SEXING TECHNOLOGIES,

              Defendant/Counterclaim Plaintiff,

     and

XY, LLC,

              Intervenor-Defendant/Counterclaim Plaintiff,

     v.

GENUS PLC,

              Counterclaim Defendant.

**OPINION AND ORDER**

14-cv-503-wmc

----------------------------------------------------------------------------------------------------

INGURAN, LLC, CYTONOME/ST, LLC,
and XY, LLC,

              Plaintiffs/Counter Defendants,

     v.

ABS GLOBAL, INC., GENUS PLC
and PREMIUM GENETICS (UK) LTD.,

              Defendants/Counter Claimants.

17-cv-446-wmc

---

The court held a jury trial in these consolidated cases in September 2019.  Following that trial, the parties filed motions and briefs on a number of issues concerning damages and other equitable relief, on which the court also provided rulings and then directed entry of a final judgment.  In this opinion, the court will address the parties' various motions to alter or amend that judgment, for awards of attorneys' fees and costs, and other related motions.

BACKGROUND

A detailed summary of the facts and procedural histories underlying both cases can be found in the court's summary judgment decision and post-trial opinions.  Material to the present motions in Case No. 14-cv-503 ("*ABS I*"), counterclaim defendants ABS and Genus conceded that they had infringed U.S. Patent No 8,206,987 (the "'987 patent"), but pursued invalidity counterclaims and defenses at trial.  The jury in *ABS I* found a dependent claim invalid, but concluded that ABS had *not* met its burden of demonstrating that two, other patent claims were invalid.  (Dkt. #697.)[1]  As for damages, the jury awarded a lump sum payment of $750,000 for ABS's past infringement of the '987 patent and set a per-straw royalty rate of $1.25 for future infringing sales.  (Dkt. #700.)  On appeal, the Seventh Circuit upheld most of the jury's verdict, but found the verdict inconsistent as to invalidity of the asserted claims of the '987 patent, and thus, remanded for retrial on those issues.[2]  In Case No. 17-cv-446 ("*ABS II*"), the remaining, material motions concern plaintiffs Inguran, LLC, Cytonome/ST, LLC and XY, LLC  and ST's (collectively referred to as "ST") asserted patent infringement claims against defendants ABS Global, Inc., Genus PLC, and Premium Genetics (UK) Ltd. (collectively referred to as "ABS"), as well as ABS's asserted counterclaim for breach of contract.

With the two cases consolidated for retrial of these remaining issues, a second jury

---

[1] Unless otherwise noted, the docket entries are to Case No. 14-cv-503.

[2] The Seventh Circuit exercised its jurisdiction over the patent counterclaims at issue in ABS I, concluding that "[t]he patent counterclaims in this case were permissive, and thus the appeal falls outside of the Federal Circuit's exclusive jurisdiction and is properly in this court."  *ABS Glob., Inc. v. Inguran, LLC*, 914 F.3d 1054, 1064 (7th Cir. 2019).

2

was impaneled in September 2019.  That jury returned a verdict in favor of ST, finding infringement of *all* of the asserted claims of the '476 and '309 patents (the "Cytonome patents") and rejecting ABS's invalidity challenges to the '476 and '309 patents.  (Dkt. #1129.)  The jury also found that ABS had not proven by clear and convincing evidence that the asserted claims of the '987 patent were invalid for lack of enablement.  (*Id.*)  Finally, with respect to ABS's breach of contract counterclaim, the jury found the evidence wanting and rejected the claim.  (*Id.*)  With respect to damages, the second jury awarded a reasonable royalty of $2.60 per straw on 3,295,355 straws for use of the Cytonome patents.  In follow-on opinions and orders, the court then resolved various, remaining damages issues and directed entry of final judgments in each case.  ('503 dkt. #1212; '446 dkt. #613.)

## OPINION

### I.  ABS and Genus PLC's Motions for Judgment as a Matter of Law or for a New Trial

Under Federal Rule of Civil Procedure 50, judgment as a matter of law may be granted where there is no "legally sufficient evidentiary basis" to find for the party on an issue.  Fed. R. Civ. P. 50(a).  In considering a Rule 50(a) motion, the court is to "construe the facts strictly in favor of the party that prevailed at trial," including drawing "[a]ll reasonable inferences in that party's favor and disregarding all evidence favorable to the moving party that the jury is not required to believe."  *May v. Chrysler Group, LLC*, 692 F.3d 734, 742 (7th Cir. 2012) (internal citations and quotation marks omitted), *withdrawn in part on reh'g*, 716 F.3d 963 (7th Cir. 2013).  In particular, the court does not make

3

credibility determinations or weigh the evidence, although the court must assure that "more than 'a mere scintilla of evidence' supports the verdict." *Id.* (quoting *Hossack v. Floor Covering Assocs. of Joliet, Inc.*, 492 F.3d 853, 859 (7th Cir. 2007)).  Essentially, the court's "job is to decide whether a highly charitable assessment of the evidence supports the jury's verdict or if, instead, the jury was irrational to reach its conclusion." *May*, 692 F.3d at 742.

Here, ABS seeks judgment in its favor or a new trial on various invalidity claims on two different groups of patents and a finding of noninfringement under Federal Rule of Civil Procedure 59, which authorizes a court to grant a new trial "if the verdict is against the clear weight of the evidence or the trial was unfair to the moving party." *David v. Caterpillar, Inc.*, 324 F.3d 851, 863 (7th Cir. 2003).  ABS also asks the court to order a remittitur or new trial on damages.  The court will address each request in turn.

## A. Motion as to Invalidity of Cytonome Patents ('503 dkt. #1218; '446 dkt. #616)

First, ABS contends claim 14 of U.S. Patent No. 7,611,309 (the "'309 patent") and claims 1 and 15 of U.S. Patent No. 7,311,476 (the "'476 patent") are all anticipated as a matter of law by two, different prior art references -- Nieuwenhuis 2003 and Weigl. Because anticipation is a fact question, a jury's determination on that issue is reviewed for substantial evidence.  *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1294 (Fed. Cir. 2015); *see also Toshiba Corp. v. Imation Corp.*, 990 F. Supp. 2d 882, 890 (W.D. Wis. 2013). A patent claim "is anticipated only if each and every element is found within a *single* prior art reference, arranged as claimed."  *Summit 6*, 802 F.3d at 1294 (emphasis added).

4

Moreover, patents enjoy a statutory presumption that they are valid, meaning ABS bears the burden of proving invalidity of each claim by clear and convincing evidence. *Id.*; 35 U.S.C. § 282.

This court already considered ABS's anticipation defense based on Weigl at summary judgment, declining to grant summary judgment because issues of fact remained for the jury to resolve. In so ruling, the court acknowledged:

> there is a solid argument that Weigl discloses two focusing areas or steps, *but* for the fact that: (1) defendants failed to develop fully a theory relying on the taper at the sample inlet to provide focusing at the primary focusing area or first step; *and* (2) Weigl does *not* depict this configuration in the same embodiment as that disclosing a third inlet (41), where additional sheath fluid is injected from below (or where there is a vertical ramp similarly providing focusing from below). Both of these qualifications preclude the court from deciding as a matter of fact on this record that Weigl disclosed the elements of the claim, at least "arranged as in the claim." *Net MoneyIN*, 545 F.3d at 1369 (internal citations and quotation marks omitted). While this anticipation claim may nevertheless succeed at trial -- and, indeed, the court would at least entertain a motion for directed verdict at the appropriate time -- there remain material disputed issues of fact that preclude summary judgment in defendants' favor at this time.

*Inguran, LLC v. ABS Glob., Inc.*, No. 17-CV-446-WMC, 2019 WL 1900345, at *20 (W.D. Wis. Apr. 29, 2019).

In its opposition brief, ST relies primarily on Dr. Vacca's expert testimony that neither Weigl nor Nieuwenhuis 2003 focuses the sample as disclosed in the challenged claims. Specifically, with respect to Nieuwenhuis 2003, Dr. Vacca explained that the

vertical inlet positions the sample but does *not* focus it.  (Trial Tr. (dkt. #1144) 39-46.)[3]
Unsurprisingly, ABS's expert Dr. Di Carlo reached a different conclusion, relying
principally on Figure 3 of the same prior art.  Based on the verdict, the jury found Dr.
Vacca's opinion more persuasive.

As for the Weigl prior art, ST again presented evidence and argued to the jury that
there was no focusing at the point where liquids are introduced.  Specifically, Dr. Vacca
explained why, in his opinion, there is no focusing at the inlet junctions reflected in Figures
5A and 5B.  (Trial Tr. (dkt. #1144) 55-56.)  Furthermore, in Dr. Di Carlo's testimony, he
acknowledged the figures that he had relied upon in opining that there *was* focusing at the
inlet junctions were modified, namely by reducing the height of the channel.  (*Id.* at 112-
13.)

Regardless, in light of Dr. Vacca's testimony, the jury had a sufficient evidentiary
basis to conclude that neither prior art reference anticipates the asserted claims in the '309
and '476 patent.  As such, the court rejects ABS's arguments to revisit the jury's verdict on
anticipation of the Cytonome patent.  In addition, while ABS argues that claim 11 of the
'476 patent is obvious as a matter of law, based either on Hara in combination with
Nieuwenhuis 2003 *or* Weigl, there is no dispute that ABS's expert Dr. Di Carlo did not
rely on Hara to disclose the focusing limitation.  (Trial Tr. (dkt. #1148) 109; Trial Tr.
(dkt. #1144) 50.)  As such, having upheld the jury verdict as to the validity of that claim
over a defense of anticipation by the Nieuwenhuis 2003 and Weigl prior art references,

---

[3] To the extent ABS is relying on Figure 4 of Nieuwenhuis 2003 to advance this argument, the
court agrees with ST that ABS did not make this argument at trial or in its Rule 50(a) motion, and
thus, has waived it.  (ST's Opp'n (dkt. #1243) 13.)

ABS's argument of obviousness in combination with Hara necessarily fails as well.

**B. Motion as to Invalidity of the '987 Patent ('503 dkt. #1219; '446 dkt. #617)**

Second, ABS seeks a finding that the jury erred in rejecting its argument in *ABS I* that the '987 patent is invalid for lack of enablement under 35 U.S.C. § 112.   More specifically, ABS argues that to enable the full scope of the asserted claim, the patent must enable enrichment to 85% purity, while the patent claims fail to do so without undue experimentation.   *In re Wright*, 999 F.2d 1557, 1561 (Fed. Cir. 1993).   Enablement is a question of law based on underlying facts.   *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 959 F.3d 1091, 1096 (Fed. Cir. 2020).   Again, because patents are presumed to be valid, it is ABS's burden to prove non-enablement by clear and convincing evidence.   *Id.*; 35 U.S.C. § 282.

In the first *ABS I* trial, the jury concluded that dependent claim 2 was invalid for lack of enablement, but that independent claim 1 and dependent claim 7 were not.   On appeal, the Seventh Circuit concluded that a "proper dependent claim's scope is a subset of the independent claim's scope," and therefore the jury's verdict was irreconcilably inconsistent.   *ABS Glob., Inc. v. Inguran LLC*, 914 F.3d 1054, 1076 (7th Cir. 2019).   On remand, the second jury concluded that ABS had failed to meet its burden of demonstrating lack of enablement with respect to all three claims.

ST also challenges ABS's position that the '987 patent *requires* enabling to 85% purity, which it describes as "commercial-grade level" enablement, contending instead that the '987 patent simply must enable "enriched" samples, which ST maintains the '987

patent does for the reasons provided by its expert, Dr. Nolan. As ST also argued in response to ABS's Rule 50(a) motion, it contends ABS's contention that "enriched" requires a showing of 85% purity is essentially an argument for claims construction, which ABS never sought. The court agrees that ABS waived any argument for claims construction of the term "enriched" by waiting until the eve of the second trial to request it, despite the court establishing a much earlier deadline to do so. (9/10/19 Order (dkt. #1121) 4-5.)

Finally, even if ABS *had* preserved this argument, Federal Circuit laws is clear that patents are not required to enable "perfected, commercially viable embodiments." *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 684 (Fed. Cir. 2015); *see also Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1307 (Fed. Cir. 2010) (rejecting argument that a patent is required to enable "optimized" and "commercial-grade" versions of the invention). Instead, the Federal Circuit simply requires a "meaningful" amount of enrichment for the '987 patent to be enabled. *CFMT, Inc. v. Yieldup Int'l Co.*, 349 F.3d 1333, 1340 (Fed. Cir. 2003). Furthermore, ST presented evidence in the form of Dr. Nolan's expert opinion testimony that the patent enables an enriched sample. Specifically, Nolan explained to the jury that the patent describes how to build a photodamage sperm sorter, and more specifically, pointed out the sections of the '987 patent that would allow a person skilled in the art to improve the enrichment of their sperm samples by practicing the patent. (Trial Tr. (dkt. #1143) 92, 97-104, 133-35.) In contrast, ABS's proffered evidence was limited to a fact witness, Dr. Appleyard, who testified about the efforts to develop a commercial-quality photodamage sperm shorter, but the law does not demand that level of embodiment, as explained above.

Accordingly, the court rejects ABS's premise that the patent requires enablement to 85% purity, and also concludes that that there was a legally sufficient evidentiary basis for the jury to conclude that the patent enabled an enriched sample, thus supporting their rejection of ABS's enablement defense.

### C. Motion as to Infringement of '476 and '309 Patents ('503 dkt. #1220; '446 dkt. #618)

Third, turning to infringement, ABS seeks judgment in its favor or a new trial on infringement of the '476 and '309 patents on the basis that:  the great weight of the evidence fails to support the jury's findings; and the court applied inconsistent standards to the parties' experts' testimony, thus prejudicing ABS.  With respect to the initial argument, ABS contends that the evidence demonstrated that ABS's accused chips lacked two of the limitations of each of the asserted claims of the '476 patent and at least one limitation of the only asserted claim of the '309 patent.  Specifically, ABS contends that its chips have an intervening focusing region between the alleged primary focusing region and the sample injection site and, therefore, its chip does not contain the "extend[] downstream of the sample injection site" limitation required by the '476 patent.  ABS also contends that ST failed to demonstrate that there were two, different focusing regions or steps with respect to both patents and that ST's position that the ramp and taper constitute separate regions is not supported by anything except its expert's *ipse dixit* opinion.

The court considered both of these arguments extensively at summary judgment but will briefly do so again in this opinion.  With respect to ABS's argument about the "extending downstream" requirement in the '476 patent, this is simply a regurgitation of

its argument that the primary focusing area must be "adjacent to" the sample injection cite, an argument which this court already rejected for the reasons set forth at length in its summary judgment opinion *and* in an order clarifying claims construction. (4/29/19 Op. & Order ('446 dkt. #280) 34-35; 8/14/19 Op. & Order (dkt. #403) 7-9 ("ABS is free to argue that this limitation is satisfied because ST has failed to identify a first focusing region 'extending downstream of the sample injection site,' just as ST may argue the opposite.").) Moreover, ST submitted evidence to the jury in the form of ABS's schematics of its chips from which a reasonable jury could conclude that both chips have a "primary focusing region extend[ing] downstream from the sample injection site." (ST's Opp'n (dkt. #1242) 5-6 (displaying schematics from Tr. Exs. 12, 213 (cropped and annotated)).) Based on these schematics, Dr. Vacca testified that Detail C and the ramp in Detail D meet this limitation. (Trial Tr. (dkt. #1136) 126-136, 163-64.) Finally, in light of the court's past determinations that this issue of fact was for the jury to resolve, the court rejects this basis for relief, particularly in light of the evidence supporting ST's position.

With respect to the separate regions requirement in both patents, the court similarly concluded at summary judgment that whether the ramp and taper were two regions was an issue of fact for the jury. *Inguran*, 2019 WL 1900345, at *17 ("[W]hether someone skilled in the art would understand that Detail D contains two focusing regions or steps for purposes of infringement of the asserted claims of the '476 and '309 patents is a factual issue to be resolved by the jury."). At trial, ST further presented evidence to support the jury's finding in the form of expert testimony from Dr. Vacca, figures from the asserted patents, and testimony from ABS witnesses, Drs. Di Carlo and Appleyard. Specifically,

Dr. Vacca testified that the ramp and taper were arranged sequentially, with the ramp first and the taper second. (Trial Tr. (dkt. #1147) 126-29, 133.) The fact that this was perhaps a simple observation does not undermine its persuasive power nor the jury's apparent decision to place weight on it. Furthermore, Vacca's testimony is supported by Trial Ex. 12, which shows the ramp preceding the tamper. (ST's Opp'n (dkt. #1242) 10.) Finally, Drs. Di Carlo and Appleyard both testified that the ramp focused before the taper. (Trial Tr. (dkt. #1148) 96-101; Trial Tr. (dkt. #1143) 68-71.)

In addition to challenging the evidentiary basis for the jury's findings of infringement, ABS takes issue with the court's treatment of expert testimony. Specifically, ABS takes issue with the court overruling its objections to Dr. Vacca's testimony about the "extending downstream" requirement on the basis that it was not previously disclosed. (Trial Tr. (dkt. #1142) 15-18, 117-27, Trial (dkt. #1135) 59-60.) ABS further contends that the court's treatment of Dr. Vacca's testimony stands in stark contrast to the court's treatment of its expert Dr. Di Carlo's testimony, allowing him to testify to his opinion that the ramp focuses from the top and the bottom and that the ramp and taper constitute a single region, but not allowing him to provide an ultimate opinion on infringement. (8/15/19 Op. & Order (dkt. #1008) 2-5.)

Starting with the court's treatment of Dr. Di Carlo's opinion, he proposed to disclose a noninfringement theory based on a claims construction that the court had already rejected. Nonetheless, in an effort to allow ABS to present a noninfringement defense, the court (1) considered Di Carlo's testimony during his deposition, which provided notice to ST about the direction of the focusing and (2) allowed Dr. Di Carlo "to

offer his opinion that the ramp focuses from the top and bottom." (*Id.* at 5.)  Moreover, after Di Carlo hedged in opining whether this new opinion, offered for the first time during his deposition, affected his noninfringement opinions,[4] the court exercised its discretion to conclude that Di Carlo would "not be permitted to rely on it in arriving at any ultimate opinion as to noninfringement of the '476 patent."  (8/15/19 Op. & Order (dkt. #1008) 5.)  In the court's view, this was an appropriate and fair treatment of Di Carlo's disclosed opinions.  In particular, the court finds no error in its good faith, discretionary attempts at reasonable line drawing.

As for Dr. Vacca, he disclosed his infringement opinions about the "primary focusing region" and "extending downstream" limitations in his original infringement reports.  (7/23/18 Vacca Rept. ('446 dkt. #130) ¶¶ 127-41; 7/27/18 Vacca 1st Suppl. Rept. ('446 dkt. #144) ¶¶ 9, 19, 22.)  Vacca also served an additional, supplemental report, which the court granted because there were no new opinions offered in the supplemental report, although the court warned ST that Vacca could not expand on what was previously disclosed in his expert report, and specifically, barred him from opining on how the ramp satisfied the "extending downstream" portion of the "primary focusing region."  (8/29/19 Op. & Order ('446 dkt. #464) 2-3.)  Again, the court views this to be a fair treatment of Vacca's disclosed, supplemental opinions, and sees no error in its treatment of that testimony compared to that of Dr. Di Carlo.

For these reasons, the court rejects ABS's arguments for judgment as a matter of law

---

[4] (Di Carlo 12/20/18 Dep. ('446 dkt. #239) 258-59 ("I don't know how it affects my opinions.  It may or may not," and "I haven't thought about it completely, but it may not be relevant, it may be relevant.").)

or for a new trial on the jury's findings of infringement of the Cytonome patents.

### D. Motion for Remittitur or New Trial on Damages ('503 dkt. #1221; '446 dkt. #619)

Finally, ABS seeks remittitur or a new trial on damages.  In reviewing a request for remittitur, the court is to consider: "(1) whether the award is monstrously excessive; (2) whether there is no rational connection between the award and the evidence; and (3) whether the award is roughly comparable to awards made in similar cases." *Deloughery v. City of Chi.*, 422 F.3d 611, 619 (7th Cir. 2005).  None of these considerations warrant a grant of ABS's request for remittitur or a new trial on damages on the record before the court.

Generally speaking, ABS offers two, principal challenges to the damages award:  (1) the jury's determination of a per straw royalty rate for infringement of the Cytonome patents exceeds the maximum supported by the evidence; and (2) the court erred in applying that rate to foreign-produced straws.  *First*, ABS argues that the jury's determination of a reasonable royalty rate of $2.60 per straw fails to take into account non-infringing substitutes available to ABS at the time of the hypothetical negotiation in the form of the SSC-B chip.  Specifically, ABS takes issue with the opinion of ST's technical expert, James Malackowski, that SSC-B chips were not commercially viable in light of conflicting evidence about the chip's failure rate and certain other assumptions Malackowski made.  Moreover, if commercial viability were assumed, then ABS contends that the reasonable royalty rate would drop to just $0.48 per straw, representing the cost of switching to SSC-B chips.

In response, ST initially points out that ABS's argument focuses solely on one of the fourteen *Georgia-Pacific* factors, ignoring evidence relating to such other factors as the fierce competition between the parties, the millions of dollars in costs savings and additional profits ABS anticipated by relying on the infringing technology, and lost profits should ABS terminate its contract with ST and launched its infringing GSS system.  (Trial Tr. (dkt. #1149) 33-37, 37; Trial Tr. (dkt. #1135) 153-54; Trial Tr. (dkt. #1146) 20-26; Damages Instr. (dkt. #1128) 2 (instructing jury on *Georgia-Pacific* factors).)  ST next notes that at trial it requested $3.50 per straw royalty, leading to a reasonable inference that the jury credited some of ABS's argument about a non-infringing alternative, although not to the extent ABS argued it should.  In both respects, the court agrees that ABS's argument for a further reduction for possible non-infringing substitutes depends on a very narrow favorable view of the evidence, as well as the factors that go into a jury's consideration of a reasonable royalty rate.  Since ABS is entitled to none of those things in seeking to attack a jury verdict, the court finds this argument unpersuasive at best.

Further, the court agrees with ST that ABS is overstating the evidence as to SSC-B's commercial viability *and* the cost of using the SSC-B chip already in production.  The jury heard the parties' evidence as to the SSC-B chip being technically viable, including Malackowski's testimony that the GSS system would suffer from reductions in both throughput and purity if it did not continue to use the infringing chips.  (Trial Tr. (dkt. #1149) 82-94.)  Specifically, the evidence that ABS did not produce the SSC-B chip until six years after the hypothetical negotiation at issue in this case certainly calls into question whether those chips were even a commercially viable, non-infringing alternative at the time

14

of the hypothetical negotiation.  Accordingly, the jury had an evidentiary basis to *not* credit ABS's overly optimistic argument that a $0.48 per straw rate was reasonable, or at least not to credit this evidence to the extent ABS requested.  At minimum, the court agrees that there is a reasonable connection between the admitted evidence and the jury's ultimate damages award, and further finds that it is definitely *not* monstrously excessive.

In addition to raising an evidentiary challenge to the jury's award, ABS also contends that remittitur is required in light of royalties previously awarded under the '987 and '092 patents.  Critically, these are not the technology offered by the Cytonome patents; instead, these patents relate to the GSS system's kill laser and digital signal processor, respectively.  As such, the court agrees with ST that the royalty rates awarded by juries with respect to these two, unrelated patented technologies do not support remittitur or otherwise undermine a finding that the royalty rate set for practicing the Cytonome patents had no rational connection to the evidence.

With respect to the *second* challenge, regarding consideration of the royalty rate for foreign-produced straws, ABS similarly contends that remittitur is warranted because it had another, non-infringing alternative through its growth of the foreign sales.  As context, these sales concern straws produced with chips either manufactured in the United States or straws imported into the United States for quality checks.  Thus, ABS's damages expert, Carrie Distler, testified that ABS could either produce the chips or conduct quality control abroad, thus avoiding any infringement within the United States.  From this, ABS argues that a reduction of the damages based on available foreign-produced straws is warranted.

However, the court has considered this argument before in post-trial briefing on

damages, and concluded that ABS had waived the right to argue that a different royalty should apply to foreign-produced straws. (5/12/20 Op. & Order (dkt. #1197) at 20-21 ("there was *no* indication that ABS intended to pursue an argument that a *different* royalty rate should apply to these; the issue was whether those units were in or out").) The court also sees no reason to revisit this decision, but even if it did, this argument only concerns one of the many *Georgia Pacific* factors as explained above. Accordingly, the court will deny ABS's motion for remittitur or a new trial on damages as well .

## II. Motions for Attorneys' Fees and Costs

### A. ABS's Motion for Attorneys' Fees ('503 dkt. #1222; '446 dkt. #620)[5]

In this motion, ABS seeks attorneys' fees based on its partially successful antitrust claim in *ABS I* under 15 U.S.C. § 26. As context, ABS already requested fees on this claim, and this court awarded reasonable attorney's fees relating to its successful antitrust claim in the amount of $4,865,324.13, plus 1.02%, compounded interest between April 21, 2017, and the date of the payment. (9/27/18 Op. & Order (dkt. #873) 2-16.) On appeal, however, while the Seventh Circuit affirmed the judgment on the merits of ABS's antitrust claim, that court vacated the fee award and remanded because "the antitrust and patent aspects of [the] case" were so "closely interlinked." *ABS Glob., Inc. v. Inguran, LLC*, 771 F.

---

[5] ABS also seeks reentry of the court's order of costs in the '503 case after the original judgment. ('503 dkt. #1230; '446 dkt. #628.) ST does not oppose this request but also requests that the court order reentry of the costs awarded to it after the original judgment. (Dkt. #1231.) As such, the court will grant ABS's motion and direct the clerk's office to reenter the two costs awards previously entered in the original lawsuit, which resulted in a net award to ST of $21,759.27. (9/7/18 Op. & Order (dkt. #873) 31.) The court will also direct the clerk's office to take up ST's bill of costs filed after the judgment in the second case and the amended judgment entered in the original case. ('503 dkt. ##1213, 1225; '446 dkt. ##608, 623.)

App'x 672, 673 (7th Cir. 2019).  Still, the Seventh Circuit "express[ed] no opinion on the way in which the district court ultimately must balance each party's success or failure on different parts of the case."  *Id.*

As mentioned above, the appeal on the merits of the *ABS I* patent claims resulted in the court vacating the jury's determination of lack of enablement as to one of the claims of the '987 patent and remanded for retrial.  On remand, however, the jury rejected ABS's enablement defense as to all three asserted claims of the '987 patent.  Critically, as ABS points out, the second jury trial resulted in the same damages award.  While the jury in the first trial awarded damages based on infringement of two of the three asserted claims -- having found one not enabled -- the same ongoing $1.25 per-straw royalty rate applied for infringement of the '976 patent after the second trial.  As such, the court agrees with ABS that its victory with respect to the antitrust claim remains unchanged.

In response to this motion, ST both raises the same arguments that the court already rejected and raises new arguments with respect to "Project Green," which it waived by failing to raise it in response to ABS's original motion for fees.  Regardless, the court sees no reason to revisit its thorough explanation of its original award of fees to ABS for its partially successful antitrust claim.  (9/27/18 Op. & Order (dkt. #873) 2-16.)  As such, the court will grant the original award.

In addition to the original award, ABS also seeks $161,868.66 in attorney's fees incurred responding to ST's appeal and preparing this petition.  The court finds both categories of fees subject to reimbursement under 15 U.S.C. § 26 and the amounts requested to be reasonable and specifically limited to the antitrust claim.  *See Ustrak v.*

17

*Fairman*, 851 F.2d 983, 990 (7th Cir. 1988) ("As the prevailing party in the underlying civil rights action, Ustrak is entitled to reimbursement of fees reasonably incurred, whether they are fees incurred in the original civil rights trial and appeal, fees incurred in proving those fees, or fees incurred in defending the district court's fee award."); *People Who Care v. Rockford Bd. of Ed.*, 90 F.3d 1307, 1314 (7th Cir. 1996) (holding that district court erred in reducing attorneys' fee award for fees incurred on appeal in defending fee award where the court of appeals dismissed the appeal as premature). Accordingly, the court will grant this motion and award ABS fees in *ABS I* in the amount of $4,865,324.13, plus 1.02%, compounded interest between April 21, 2017, and the date of the payment, plus an additional $161,868.66 in fees substantially incurred by ABS in defense of its antitrust claim on appeal.

### B. ST's Motion for Attorneys' Fees ('503 dkt. #1228; '446 dkt. #626)

ST also seeks attorneys' fees on ABS's post-remand enablement defense of the '978 patent in *ABS I* under the "exceptional case" provision of 35 U.S.C. § 285. ST contends that an award is warranted because after ABS lost its bid to retry its obviousness defense, it "persisted with an exceptionally weak and bad faith enablement-only defense that flatly contradicted the opinion of ABS's own expert, who made a bald admission that only 'routine engineering' would be required to make and use the invention of the '987 Patent." (ST's Mot. (dkt. #1228) 2.) ST further contends that ABS then engaged in a "pattern of misconduct" in pushing for claims constructions, namely that "enriched" requires 85% purity, in pursuing its enablement defense. On this basis, ST contends that the enablement re-trial constitutes an "exceptional case" and the court should award ST its attorneys' fees.

18

Typically, an exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*   Relevant considerations include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554, n.6.  As the Supreme Court held in *Octane Fitness,* the exceptional nature of a case and entitlement to fees under Section 285 need only be shown by a preponderance of the evidence. *Id.* at 557–58.

ST contends that this is just such an exceptional case because:  (1) ABS's decision to pursue the enablement defense was frivolous or objectively unreasonable; and (2) ABS's litigation strategy on remand was unreasonable.  The court considers both arguments in turn, rejecting both. *First*, with respect to its enablement defense on remand, while ABS ultimately was unsuccessful in demonstrating that the asserted claims of the '987 patent were not enabled, this is not the test for awarding fees in the patent context.  Moreover, the court considers the procedural posture of this defense.  At the first trial, this claim had some traction, as demonstrated by the jury's finding that claim 2 of the '987 patent was invalid for lack of enablement.  On appeal, if this was a frivolous defense, the Seventh Circuit would have called it as such and not remanded for a new trial on this defense. *Cf. Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017) ("Absent

misrepresentation to the court, a party is entitled to rely on a court's denial of summary judgment and JMOL . . . . as an indication that the party's claims were objectively reasonable and suitable for resolution at trial.") (citation omitted).  Moreover, for the reasons provided during the second trial, the court warned *ST* that it was in danger of losing on a directed verdict on enablement after trial.  (Trial Tr. (dkt. #1137) 5.)  While the court ultimately opted to deny ABS's motion for judgment as a matter of law on ST's enablement defense, the court does not view this defense as frivolous, exceptionally weak or unreasonable to warrant fees for all the reasons described above.

*Second*, the court rejects ST's argument that ABS's changed strategy on remand constitutes litigation misconduct and warrants fees. As an initial observation, patent cases are typically extremely complex, with a number of moving parts.  While ABS shifted its strategy given that obviousness was not in play during the second trial, this change in litigation strategy does not constitute misconduct.   In its opposition brief, ABS also explained the interplay between the two defenses, and how trying enablement on its own changed the calculus.  (ABS's Opp'n (dkt. #1248) 17 ("The trouble for ST is that, were it right that the asserted claims are non-obvious (as is now the law of the case), its position would bolster the argument that the claims are not enabled.").)  The court will not fault, nor read too much into, ABS's method of litigating this defense on remand.  While ST would also fault ABS for pushing repeatedly for new constructions, again, this is a common feature of patent cases and does not render this case exceptional, although the court would prefer that it did!  At bottom, ST fails to point to any egregious conduct currently that would warrant fee-shifting.  *See PersonalWeb Techns. LLC v. EMC Corp.*, No. 5:13-cv-01358,

2020 WL 3639676, at *3 (N.D. Cal. July 6, 2020) ("[P]ost-Octane decisions awarding fees have generally relied on egregious behavior.").  For these reasons, the court will deny ST's motion for fees.

### III.  ABS and Genus's Motion to Stay Judgments ('503 dkt. #1245; '446 dkt. #643)

In this final motion, ABS seeks a stay on portions of the judgments on which the parties have been unable to reach agreement -- namely, payment of ongoing royalties of the '987, '476 and '309 patents pending resolution of appeals.[6]  Specifically, ABS requests that it be able to pay the ongoing royalties into an escrow account, rather than to ST directly.

Stays of judgment are governed by Federal Rule of Civil Procedure 62.  A party may stay a "monetary" judgment as a matter of right, pursuant to Rule 62(b), upon providing sufficient security. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, No. 2011-1538, 2012 WL 10716768, at *1 (Fed. Cir. Apr. 2, 2012); *see also Donovan v. Fall River Foundry Co.*, 696 F.2d 524, 526 (7th Cir. 1982) (Rule 62 provides a right to an automatic stay of a "money judgment").  In *ActiveVideo*, the Federal Circuit also confirmed that ongoing royalties are a form of "monetary relief that is normally subject to Rule [62(b)]."  2012 WL 10716768, at *1-2.

In response, ST contends that it is inadequately protected by ABS's proposal to pay the ongoing royalties into escrow, rather than to ST directly.  Given that ABS's ongoing

---

[6] ABS also filed a motion for leave to file a reply brief ('503 dkt. #1255; '446 dkt. #653), which the court will grant and has considered.

royalties are based on sales, requiring a bond or letter of credit, as ST proposes, is both a poor fit given that this amount varies and also does not reflect that it is driven by ABS's sales and, therefore, the risk that ABS would not pay is diminished.  ST also argues that ABS's proposal to pay into escrow is vague.  On this point, the court agrees, but ABS explains in its reply brief that it would be willing to make the payments into the court for it to hold pending full resolution of this case, a proposal ST also suggests in its opposition. While the court will not unwind the payments made to date, the court will grant ABS's motion and stay the judgment to the extent ABS is not required to make ongoing payments to ST directly, but instead, may make those payments to the court for it to hold, pending resolution of the appeal or appeals.

ORDER

IT IS ORDERED that:

1) ABS Global, Inc., Genius PLC and Premium Genetics (UK) Ltd.'s motion for judgment as a matter of law or, in the alternative, a new trial as to invalidity of Cytonome patents ('503 dkt. #1218; '446 dkt. #616) is DENIED.

2) ABS's motion for judgment as a matter of law or, in the alternative, a new trial as to invalidity of the '987 patent ('503 dkt. #1219; '446 dkt. #617) is DENIED.

3) ABS's motion for judgment as a matter of law or, in the alternative, a new trial as to infringement of '476 and '309 patents ('503 dkt. #1220; '446 dkt. #618) is DENIED.

4) ABS's motion for remittitur or new trial on damages ('503 dkt. #1221; '446 dkt. #619) is DENIED.

5) ABS's motion for attorneys' fees ('503 dkt. #1222; '446 dkt. #620) is GRANTED.  ABS is awarded $4,865,324.13, plus 1.02%, compounded interest between April 21, 2017, and the date of the payment, plus an additional $161,868.66 against Inguran, LLC d/b/a Sexing Technologies.

6) Inguran, LLC, Cytonome/ST, LLC, and XY, LLC's motion for attorneys' fees ('503 dkt. #1228; '446 dkt. #626) is DENIED.

7) ABS's motion for reentry of the court's prior costs award ('503 dkt. #1230; '446 dkt. #628) is GRANTED. The clerk's office is directed to REENTER the costs awards previously entered, which resulted in a net award of ST in the amount of $21,759.27. ('503 dkt. #873.) The clerk's office is also directed to take up the bill of costs filed after the second trial. ('503 dkt. ##1213, 1225; '446 dkt. ##608, 623.)

8) ABS's motion to stay judgments ('503 dkt. #1245; '446 dkt. #643) is GRANTED. The portions of the judgments in *ABS I* and *ABS II* requiring payment of ongoing royalties is STAYED pending expiration of the time to seek appellate review or, if an appeal is taken, issuance of the mandate from the Court of Appeals. During the stay, ABS is ordered to make payments of ongoing royalties to the court for it to hold in escrow.

9) ABS's motion for leave to file a reply in support of its motion to stay judgments ('503 dkt. #1255; '446 dkt. #653) is GRANTED.

10) ST's motion for prioritized ruling ('503 dkt. #1262; '446 dkt. #619) is DENIED AS MOOT.

11) ABS's stipulations regarding extension of original letter of credit ('503 dkt. ##1278, 1279; '446 dkt. ##678, 679) are ACCEPTED.

Entered this 1st day of July, 2022.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge